(No. 56148.—

FRANCISCAN SISTERS HEALTH CARE CORPORATION, Appellant, v. JOHN R. DEAN, Indiv. and as Ex'r, *et al.*, Appellees.

*Opinion filed April 22, 1983.*

454

Hardin W. Hawes, of Sebat, Swanson, Banks, Lessen & Garman, of Danville, for appellant.

F. Daniel Welsch, of Young, Welsch, Young & Hall, of Danville, for appellees.

JUSTICE CLARK delivered the opinion of the court:

Defendant John R. Dean prepared Mrs. Elizabeth Messmer's final will on February 7, 1978. After making two small specific bequests the will further provided:

"All the rest and residue of my estate, personal and mixed, I give, devise and bequeath in equal parts among them to St. Elizabeth Hospital of Danville, Illinois and my long time friend and advisor John R. Dean, or his heirs."

Mrs. Messmer died in St. Elizabeth Hospital on April 10, 1979, at the age of 97, and the will was admitted to probate shortly after Mrs. Messmer's death. The hospital's and Dean's shares were each worth approximately $130,000. The plaintiff, Franciscan Sisters Health Care Corporation, doing business as St. Elizabeth Hospital, filed suit, seeking to invalidate the entire will, alleging that Dean as the attorney who drafted the instrument had presumptively exercised undue influence in obtaining his legacy. Mr. Dean admitted in his pleadings and stipulated at trial that a presumption of his undue influence over the testator had been raised. Finding that Dean had not overcome the presumption of undue influence, the circuit court of Vermilion County invalidated the will. Dean appealed that decision and argued before the appellate court that the trial court had misunderstood the effect of the presumption and that the evidence he presented rebutted it.

The appellate court, in a split decision, concluded that the evidence was sufficient to rebut the presumption but that

the inference of undue influence remained. The appellate court remanded the cause to the trial judge as the trier of fact to assess the strength of the evidence. (102 Ill. App. 3d 61.) We granted the plaintiff's petition for leave to appeal (73 Ill. 2d R. 315). We now affirm the decision of the appellate court.

Because the strength of the evidence is a primary focal point in this appeal, we find it necessary to carefully review the evidence adduced at trial. At the outset, the parties agreed that an attorney-client relationship existed between Dean and Mrs. Messmer and that he had prepared the contested will and had it typed in his office. Because Dean received a substantial legacy under the terms of the will, the circuit court judge ruled that there was a presumption of undue influence before any testimony was heard.

Mr. Dean had known Mrs. Messmer long prior to the day the contested will was prepared. They had known each other socially for over 20 years. He acted as Mrs. Messmer's lawyer for the last few years of her life. Dean and his family had vacationed with the testator, dined with her, and visited her on holidays.

After preparation of the will in Mr. Dean's office on February 7, 1978, Dean went down the hall to the offices of attorney Edward Litak. Dean informed Litak that he had prepared a will for a client in which he, Dean, was quite a substantial beneficiary and that he wanted Litak and his secretary, Julie Hembrey (18 years old) to witness the will and to talk to the testator about it.

Dean then went back to his office and brought Mrs. Messmer to Litak's office. After introducing Mrs. Messmer to Mr. Litak, he left the office. Mr. Litak and Ms. Hembrey spent the next 15 to 20 minutes asking Mrs. Messmer if she understood what she was doing and if she knew that Mr. Dean was receiving a substantial amount.

Both Mr. Litak and Ms. Hembrey testified that they believed that at the time Mrs. Messmer executed the will she

was of sound mind, acting freely and voluntarily, and under no duress of any kind. The will was executed in Litak's office after their conversation. Ms. Hembrey then went and notified Mr. Dean, who subsequently returned to Litak's office. Mrs. Messmer and Mr. Dean then left together.

Shortly after the execution of the will, Mrs. Messmer moved to a nursing home, where she remained confined for several months, up until approximately two days before her death. While the Dean family's social contacts with Mrs. Messmer remained substantially the same for 20 to 25 years, the family did visit Mrs. Messmer more frequently during the last three months of her life.

About six days before she died, Mrs. Messmer became upset with Mrs. Dean as the result of a conversation they had at the nursing home. Mrs. Messmer wanted around-the-clock nursing care because she was nearly blind, could not see to feed herself, and had difficulty swallowing. Mrs. Dean indicated to Mrs. Messmer that it was not necessary to spend that kind of money since she was being adequately taken care of at the nursing home.

Shortly thereafter Mrs. Messmer asked a nursing home employee to call Mr. Robert B. Acton, an attorney who had formerly represented her and whom she had known for many years, for the purpose of asking him to come to the nursing home. Mr. Acton came and spoke with Mrs. Messmer. According to Mr. Acton, Mrs. Messmer told him that she wanted nothing more to do with Mr. Dean.

As a result of that conversation, Mr. Acton prepared a power of attorney, granting the Second National Bank of Danville the power to manage her affairs. Mrs. Messmer subsequently signed the document and died soon thereafter.

At the hearing, several of Mrs. Messmer's prior wills were introduced into evidence by the plaintiff in attempting to show a pattern of growing influence of Dean over Mrs. Messmer. In the seven years prior to her death, she executed four wills and a codicil. The first was prepared by at-

torney Robert Acton and dated March 10, 1972. In it, Mrs. Messmer divided her estate between St. Elizabeth Hospital of Danville and St. Paul Elementary School. In the event that the school was not in operation at the time of her death, that part was to be given to the hospital. She appointed a friend, Norman M. Dale, as executor and the Second National Bank of Danville as successor executor.

The second will was also prepared by Mr. Acton and was dated November 25, 1974. In it, she gave Norman M. Dale a small bequest and the residue of her estate to the hospital. Again, she appointed Norman M. Dale as executor and the Second National Bank of Danville as successor executor.

After the execution of the 1974 will, a legal conflict arose and Mr. Acton asked Mrs. Messmer to obtain other counsel to represent her in a loan transaction involving Mrs. Messmer and another of Mr. Acton's clients. Mrs. Messmer sought Mr. Dean's services.

Mr. Dean prepared for Mrs. Messmer the third will dated September 22, 1975. In it, she gave Mr. Dean her safe and its contents. She gave two friends some furniture and again gave the residue of her estate to St. Elizabeth Hospital. She appointed the Second National Bank as executor and instructed the bank to use Mr. Dean as her estate's attorney.

Mr. Dean prepared a codicil dated March 4, 1976. In it, Mrs. Messmer changed the executor of her will from the bank to Mr. Dean. The will of September 1975 remained the same in all other aspects. Finally, Mr. Dean prepared and Mrs. Messmer executed on February 7, 1978, the last document, which is the subject of this will contest.

Mr. Dean had also prepared the testator's 1975 through 1978 income tax returns. In November of 1978, Mrs. Messmer executed an authorization for Mr. Dean to enter her safety deposit box. Sometime thereafter, according to Mr. Acton, Mrs. Messmer asked him to obtain from Dean the return of the key to that box. The record does not show why Mrs. Messmer wanted to procure the key. While Mr. Dean

indicated that he would return the key to Mr. Acton, he never did.

This court has defined undue influence to be "any improper *** urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely." (*Powell v. Bechtel* (1930), 340 Ill. 330, 338.) To set aside a will, this court has found that the undue influence "must be of such a nature as to destroy the testator's freedom concerning the disposition of his estate and render his will that of another." (*Breault v. Feigenholtz* (1973), 54 Ill. 2d 173, 181.) It is important to understand what one faces when suing to invalidate a will that complies with the statutory prerequisites.

Mr. Dean does not dispute the fact that because he drafted the will and stands to gain a substantial legacy from it, a presumption of undue influence has been raised. At issue here is what is required to rebut such a presumption and whether that requirement was met.

In *Diederich v. Walters* (1976), 65 Ill. 2d 95, 100-03 (hereafter *Diederich*), this court addressed the approach taken in courts of this State concerning the effect of presumptions:

"The determination of whether a jury should be instructed as to the existence of a presumption must be made by the trial court in the context of the facts and circumstances of each case with reference to the applicable law, the evidence, other instructions and the particular nature and procedural effect of the presumption itself. With regard to the procedural effect of presumptions, most jurisdictions in this country follow the rule that a rebuttable presumption may create a *prima facie* case as to the particular issue in question and thus has the practical effect of requiring the party against whom it operates to come forward with evidence to meet the presumption. However, once evidence opposing the presumption comes into the case, the presumption ceases to operate, and the issue is determined on the basis of the evidence adduced at trial as if no presumption had ever existed. (See 1 Jones,

Evidence sec. 3:8 (6th ed. 1972).) The burden of proof thus does not shift but remains with the party who initially had the benefit of the presumption. Consistent with this view, Dean Wigmore states in his treatise on evidence that 'the peculiar effect of a presumption "of law" (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule \*\*\*.' (9 Wigmore, Evidence sec. 2491, at 289 (3d ed. 1940).) As stated in Jones on Evidence, 'since the presumption loses its force when evidence is introduced against it, it would naturally follow that no mention of the presumption would be made in the instructions to the jury, and the issue is submitted without any knowledge on the part of the jury of the special legal significance of the basic facts from which the presumption originally arose.' 1 Jones, Evidence sec. 3:9 at 146 (6th ed. 1972).

    \*\*\*

The prevailing view that a presumption ceases to operate in the face of contrary evidence has generally been followed in Illinois. As was stated by this court in *Coal Creek Drainage and Levee District v. Sanitary District* (1929), 336 Ill. 11,31, and restated in numerous subsequent decisions: 'A presumption is not evidence and cannot be treated as evidence. It cannot be weighed in the scale against evidence. Presumptions are never indulged in against established facts. They are indulged in only to supply the place of facts. As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered the presumption vanishes entirely.' (See, *e.g., Lohr v. H. Barkmann Cartage Co.* (1929), 335 Ill. 335; *Bollenbach v. Bloomenthal* (1930), 341 Ill. 539; *Miller v. Pettengill* (1945), 392 Ill. 117.) More recently in *McElroy v. Force* (1967), 38 Ill. 2d 528, 532-33, we stated: 'A rebuttable presumption, such as exists here, is not evidence in itself, but arises as a rule of law or legal conclusion from the facts proved. (*Osborne v. Osborne,* 325

Ill. 229; *Brown v. Brown* 329 Ill. 198; *Trustees of Schools v. Lilly*, 373 Ill. 431.) These presumptions "do not shift the burden of proof. Their only effect is to create the necessity of evidence to meet the *prima facie* case created thereby, and which, if no proof to the contrary is offered, will prevail." (*Helbig v. Citizens' Insurance Co.*, 234 Ill. 251, 257; accord, *Brown v. Brown*, 329 Ill. 198; *Johnson v. Pendergast*, 308 Ill. 255.) Stated differently, the presence of a presumption in a case only has the effect of shifting to the party against whom it operates the burden of going forward and introducing evidence to meet the presumption. If evidence is introduced which is contrary to the presumption, the presumption will cease to operate. (*Osborne v. Osborne*, 325 Ill. 229; *Lohr v. Barkmann Cartage Co.*, 335 Ill. 335; *Miller v. Pettengill*, 329 Ill. 117.) \*\*\*' "

In the passage above from *Diederich,* the court says, " '\*\*\* These presumptions "do not shift the burden of proof." ' " The appellate court was correct in construing the term "burden of proof" here narrowly to mean burden of persuasion, since the term "burden of proof" encompasses both the burden of producing evidence that will satisfy a judge of the existence of an alleged fact and the burden of persuading the trier of fact that the alleged fact is true. (McCormick, Evidence sec. 336, at 783-84 (2d ed. 1972).) The burden of persuasion does not shift but remains with the party who initially had the benefit of the presumption. In the instant case, the burden of production shifted to the defendant once the presumption of undue influence arose. If the presumption is then rebutted the burden of production shifts back to the plaintiff.

The prevailing theory regarding presumptions that Illinois follows and *Diederich* speaks about is Thayer's bursting-bubble hypothesis: once evidence is introduced contrary to the presumption, the bubble bursts and the presumption vanishes. (McCormick, Evidence sec. 345, at 821 (2d ed. 1972); see *Coal Creek Drainage & Levee District v. Sanitary District* (1929), 336 Ill. 11.) It is consistent with the Thayer approach that the party producing evidence to rebut

the presumption must come forward with evidence that is "sufficient to support a finding of the nonexistence of the presumed fact." (Graham, *Presumptions in Civil Cases in Illinois: Do They Exist?* 1977 S. Ill. U. L.J. 1, 24.) If Dean had offered no evidence to rebut the presumption of undue influence, the plaintiff would have been entitled to a judgment as a matter of law. Once the presumption had been raised, the burden of production shifted to Dean. While *Diederich* said that, "*** '[i]f evidence is introduced which is contrary to the presumption, the presumption will cease to operate ***' " (65 Ill. 2d 95, 102), the court did not indicate what quantum of evidence would be necessary.

The amount of evidence that is required from an adversary to meet the presumption is not determined by any fixed rule. A party may simply have to respond with some evidence or may have to respond with substantial evidence. If a strong presumption arises, the weight of the evidence brought in to rebut it must be great. 5 A.L.R.3d 19, 39 n.14 (1966).

*Wunderlich v. Buerger* (1919), 287 Ill. 440, involved a will contest where an attorney had drafted a will for his client and received a substantial bequest under the will. In discussing the amount of evidence necessary to overcome the presumption of undue influence the court said:

> "The strength of the presumption and the amount of proof required to overcome it must depend upon the circumstances of each case." 287 Ill. 440, 445.

The court went on to say that in the circumstances the court was confronted with there, the evidence must be "convincing that the instrument is the free expression of the wish of the testator and not of the will of the fiduciary." 287 Ill. 440, 446.

A later pronouncement of this court in a will-contest case came in *Tidholm v. Tidholm* (1945), 391 Ill. 19, where the court said that when a presumption of undue influence arises it "casts upon the proponent, if he is to sustain the

will, the necessity of showing that the execution of the will was the result of free deliberation on the part of the testator and of the deliberate exercise of his judgment, and not an imposition or wrong practiced by the trusted beneficiary. (*Seavey v. Glass,* 315 Ill. 611; *Wunderlich v. Buerger,* 287 Ill. 440; *Snyder v. Steele,* 287 Ill. 159; *Gum v. Reep,* 275 Ill. 503.) This, however, does not change the general rule, which is, that upon the whole case, the burden of proof is upon the contestant to establish undue influence by the whole evidence. *Weston v. Teufel,* 213 Ill. 291." 391 Ill. 19, 25-26.

We find the language of the court used in *Tidholm* and *Wunderlich* supported by the line of disciplinary cases where we have required attorneys to come forward with clear and convincing evidence that they are not defrauding or unduly influencing their clients. (*In re Barrick* (1981), 87 Ill. 2d 233; *In re Saladino* (1978), 71 Ill. 2d 263; see *In re Vogel* (1982), 92 Ill. 2d 55.) While it is true that those cases arose in the context of disciplinary proceedings and are not attempting to set forth any standards to articulate what is required to rebut a presumption of undue influence, they are nevertheless helpful in demonstrating how closely this court scrutinizes allegations involving attorneys' conduct with their clients and specifically attorneys' drafting of wills in which they benefit from a provision of the will.

In *Rizzo v. Rizzo* (1954), 3 Ill. 2d 291, this court reviewed a fiduciary relationship arising out of a partnership. After finding that a fiduciary relationship existed and the defendants benefited from it, the court determined that a presumption of undue influence arose from the confidential relationship of the partnership, since the dominant party had enjoyed a benefit due to his fiduciary status. That presumption having been raised, the court determined that the beneficiary must produce clear and convincing evidence in order to rebut that presumption. 3 Ill. 2d 291.

The potential for abuse is great where an attorney drafts a will and stands to benefit from that will. Clients may often

depend upon their attorneys for both financial and legal advice. As the relationship of attorney-client grows, a sense of trust develops and is strengthened between the two parties. This trust can be abused by an unscrupulous attorney, and we feel it is usually unnecessary for lawyers to prepare clients' documents under which they benefit. Almost always, a third party is available who can intervene and provide a disinterested perspective.

We therefore feel that as matter of public policy an attorney in such a situation must provide "clear and convincing" evidence to rebut the presumption of undue influence once it has been raised.

We now find that measured by a "clear and convincing" standard, the evidence brought forward by Mr. Dean was sufficient to rebut the presumption of undue influence. The appellate court was correct in recognizing the critical question to be Mrs. Messmer's state of mind on February 7, 1978, the day that she signed the will. (*Sterling v. Dubin* (1955), 6 Ill. 2d 64, 72.) The time the will was executed is the period we must scrutinize; what Mrs. Messmer felt on a prior occasion or at a later date is irrelevant.

It was established that although the testator was old, she was alert and intelligent. She managed her own personal and business affairs prior to and during the period in which the contested will was executed.

Both Mr. Litak and Ms. Hembrey concluded that the will represented Mrs. Messmer's wishes. It is important to recall that this assessment was made after considerable questioning of Mrs. Messmer, in the office of Mr. Litak without Mr. Dean being present. Litak asked the testator what her relation to Dean was; whether the substantial gift to Dean was in accordance with her wishes; and whether Dean or anyone else had suggested the gift or pressured her into making it. Litak and Hembrey were convinced that she was aware that Mr. Dean was made a substantial beneficiary under the will and that is what she wanted to do. We conclude that the

evidence Mr. Dean presented is sufficient to overcome the presumption of undue influence. In accord with Thayer's theory in effectively rebutting the presumption, the "bubble" has burst and the presumption of undue influence has vanished.

Sufficient evidence has been produced to rebut the presumption of undue influence as a matter of law. However, the judge as the trier of fact must now weigh the evidence and consider any and all reasonable inferences that can be drawn from these facts, including the possible inference of undue influence. Our decision here affirms the appellate court, which held that after the presumption is rebutted as a matter of law "[w]hat remains is a factual question, and we remand the cause to the trial judge as trier of fact to assess the strength of the evidence." (102 Ill. App. 3d 61, 70.) We direct that the circuit court hear additional evidence as to whether Mr. Dean in fact exercised undue influence on Mrs. Messmer in the drafting of her will which provided a substantial beneficial interest to him.

The judgment of the appellate court is affirmed insofar as it reversed the judgment of the circuit court. We remand to the circuit court so that the trier of fact can weigh the evidence in deciding the factual question with which we are left.

*Affirmed and remanded,*
*with directions.*