*In re* ESTATE OF EMMA LUCILLE REESER LEWIS, Deceased (Marilyn Webb, Petitioner-Appellee, v. Jerry Reeser, Respondent-Appellant).

Fourth District   No. 4—89—0429

Opinion filed January 11, 1990.—Rehearing denied February 22, 1990.

Jerry N. Raymer, of Raymer Law Office, of Bloomington, for appellant.

Robert S. White and William F. Costigan, both of Costigan & Wollrab, P.C., of Bloomington, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On June 16, 1987, and during the administration of the estate of Emma Lucille Reeser Lewis in the circuit court of McLean County, petitioner Marilyn Webb, a legatee under the will of that decedent, filed a petition in that proceeding to recover assets. The respondent to that petition was Jerry Reeser, who was then serving as executor in that estate. In dispute was the ownership of two certificates of deposit (CDs), the signature cards for which set forth a statutory joint tenancy (Ill. Rev. Stat. 1985, ch. 17, par. 3304—8 (formerly Ill. Rev.

Stat. 1983, ch. 17, par. 3101)) in the decedent and respondent. After an evidentiary hearing, the court entered an order on April 11, 1989, (1) finding the decedent had not made a valid lifetime gift of any interest in the certificates to respondent; and (2) ordering the certificates to be treated as an asset of the estate. Respondent has appealed.

The heart of this appeal concerns the operation of the presumption of gift which arises from the creation of a statutory joint tenancy previously described. (*Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 202 N.E.2d 470; *Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850.) Respondent maintains on appeal that (1) the evidence was insufficient, as a matter of law, to negate the presumption the decedent made a gift to him of a survivorship interest in the CDs; and (2) the court erred in considering certain of his testimony in a discovery deposition as an admission. We need not consider the latter contention because we hold the evidence failed, as a matter of law, to overcome the presumption of gift. Accordingly, we reverse.

The evidence showed (1) petitioner and respondent were two of the four heirs and surviving children of the decedent; (2) decedent died testate on February 2, 1986; (3) the value of the probated estate absent the two CDs was approximately $500,000; (4) after small gifts to grandchildren, the remainder of the estate was divided equally among the children; (5) the CDs were in the face amounts of $57,827.45 and $35,000 and bore dates of January 7, 1982, and October 6, 1982, respectively; and (6) respondent had contributed nothing toward the purchase of the CDs.

Most of the evidence upon which petitioner relied to rebut the presumption of gift of the CDs came from the discovery deposition of respondent. There, he stated his mother had asked him to sign the signature card for the two accounts, and he had done so. However, he stated he had no knowledge concerning the meaning of those cards at the time he signed them and further acknowledged he *first* learned he was named a joint tenant of those documents when he opened his mother's lock box after her death. He admitted he had had no access to her lock box during her lifetime, and she received the income from the certificates. He further testified in the deposition that, during the last four years of his mother's life, he was an authorized signatory on her checking account and helped her pay her bills from that account either by signing checks or filling them out for her signature. He indicated his mother had numerous other accounts and CDs which stood in her name alone.

Respondent's testimony at the evidentiary hearing was more fa-

vorable to him. At that time he testified that, before signing the signature cards, he "skimmed the writing on them and understood the purpose of the cards was to make him a joint tenant." He also stated his mother told him she was "putting [his] name on some [CDs]," and, based on prior gifts she had made to him, he had reason to believe she was making a gift to him. Respondent also stated at the hearing that, after his name was placed on the signature cards, he occasionally saw items relating to the CDs, such as statements of interest paid. Respondent testified that, when, upon his deposition, he stated he first learned of the joint tenancy after his mother's death, he meant he did not know he would receive the CDs upon her death. He further stated he had forgotten about his name being on the signature cards by that time. Respondent also testified that during his mother's last 10 years she lived approximately two blocks from him and he saw her three or four times a week. He indicated she wanted him to live close by her, and they had a very close relationship. On the other hand, he stated his mother and petitioner "fought like cats and dogs," and his other sisters seldom helped his mother.

In *Murgic* and *Wubbena*, the supreme court clarified the law in regard to statutory provisions which create interest in intangible personalty containing rights of survivorship. The substance of these holdings was (1) the rights of survivorship are created by the execution of the various instruments provided in the statute in conformity with the provisions of the statute; (2) following common law procedures necessary to create rights of survivorship was no longer necessary; (3) compliance with the statutory requirements creates a presumption that those furnishing consideration for the creation of such interests intend to make a gift to those who furnish less than their share or no consideration; and (4) "courts may look behind the form of the transaction to determine the parties' rights," but, in doing so, "the burden is upon one questioning the gift to overcome the presumption by clear and convincing proof." *Murgic*, 31 Ill. 2d at 589, 202 N.E.2d at 471-72.

■ After its decision in *Murgic*, the supreme court decided *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872, and *Diederich v. Walters* (1976), 65 Ill. 2d 95, 357 N.E.2d 1128, by which the "bursting bubble" or Thayer theory of presumptions in civil cases has been adopted in this State. Under that theory, if the underlying facts which give rise to the presumption are established, a burden is placed on the party against whom the presumption operates to put forth sufficient evidence to rebut the presumption. If sufficient rebuttal evidence is presented, the presumption vanishes.

The determination as to the sufficiency of the rebuttal evidence is a determination for the court to make. The *Franciscan Sisters* court held the evidence required to rebut a presumption "is not determined by any fixed rule" but that, "[i]f a strong presumption arises, the weight of the evidence brought in to rebut it must be great." *Franciscan Sisters*, 95 Ill. 2d at 463, 448 N.E.2d at 877.

■■ ■ The presumption of donative intent arising from compliance with statutory procedures for creating a survivorship interest in intangible assets is a civil presumption, and, thus, it is subject to the "bursting bubble" theory. As the precedential cases have required clear and convincing evidence to rebut the presumption, that is the logical standard to apply in determining whether the "bubble" had burst here, thereby negating the presumption. The record does not indicate whether the trial court applied that theory here. Whether it was applied makes little difference, however, because, regardless of whether we view the evidence to determine whether the bubble burst or whether we merely pass on the question of the sufficiency of the proof to rebut the presumption under some other theory of presumptions, we conclude the determination of the trial court cannot stand. Lack of donative intent on the part of the decedent was not shown by clear and convincing evidence, and, if any effect is to be given to the presumption, the award of the two CDs to the estate is contrary to the manifest weight of the evidence.

The evidence that the decedent complied with statutory requirements in setting up the accounts with a purported right of survivorship in respondent is undisputed. In examining the facts presented to rebut the presumption of gift, we must recognize the trial court could have interpreted that testimony in a way most favorable to petitioner. From the deposition testimony, the court could have concluded respondent knew little about the existence of the CDs and his rights therein until after the decedent's death. The evidence was undisputed he contributed nothing toward their creation and never exercised any authority or control over them. The court could properly have disbelieved respondent's testimony his mother told him she was putting his name on some CDs.

In support of her contention the evidence here supported the circuit court's determination, petitioner relies upon decisions in the cases of *In re Estate of Abbot* (1987), 157 Ill. App. 3d 289, 510 N.E.2d 619, *In re Estate of Friedman* (1984), 123 Ill. App. 3d 82, 462 N.E.2d 692, and *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 388 N.E.2d 431. We conclude all of those cases present factors not present here.

The *Abbot* case concerned a citation to obtain a bank account from

one of a decedent's heirs whose name was listed on that account as a joint tenant. The trial court had admitted testimony by heirs who would take from his estate that the decedent had made statements (1) indicating the joint bank accounts in question were created so that, if anything happened to him, the joint owner could pay his bills; and (2) that he wanted any funds left over to be shared equally. The appellate court agreed this testimony was barred by the Dead Man's Act (Ill. Rev. Stat. 1985, ch. 110, par. 8—201) (*Abbot*, 157 Ill. App. 3d at 292, 510 N.E.2d at 621) but deemed the error harmless because other evidence of substance was produced which would support the trial court's determination. As here, some evidence there showed the respondent did not believe a gift was being made to her, and she had little knowledge of what was in the account. However, there, unlike here, the joint account was created by the decedent just before he left for a hospital for surgery for a cancerous condition which resulted in his death some seven months later. Evidence also indicated that, after the death, the respondent used some of the money to pay her father's bills and then sent to each of the other heirs a check for $5,000, saying she was following her father's wishes. The total amount in the two accounts in question was approximately $90,000. The appellate court also noted that, there, unlike here, had the respondent's right of survivorship been upheld, she would receive almost all of the decedent's property, and the remaining heirs would receive almost nothing. This was deemed to be an outcome the decedent would not likely have desired.

In *Friedman*, a similar type of citation proceeding was involved in regard to a joint tenancy bank account, and the appellate court upheld the trial court's ruling that the account belonged to the estate of the decedent. There, a mother, while hospitalized, requested her daughter to set up a joint account. The decedent was in and out of hospitals thereafter until she died some three years later. Several joint tenancy accounts with the daughter were set up during this time. The respondent did make two withdrawals for her own benefit during the existence of the accounts, but, unlike here, the respondent made numerous withdrawals at the request of the decedent and for the decedent's benefit.

A similar dispute over rights of survivorship was involved in *Guzak*, where the appellate court also affirmed a circuit court determination the account belonged to the estate. There, also, the decedent was a parent, and the dispute arose among his children. The evidence showed the account had been held by the decedent and his wife until her death in 1944, and, in 1969, the name of respondent, a son, was

added as a joint tenant. The opinion indicated the father stated at that time the son was being so named "in case anything happened to decedent." (*Guzak*, 69 Ill. App. 3d at 554, 388 N.E.2d at 433.) Respondent lived with his father and sometimes made deposits, but the father kept the passbook. Another child testified she had made some deposits to the account for her father and had kept the passbook. She further testified that, when her father was hospitalized for the last time, he told her that a trust account he held was for respondent. Other evidence indicated respondent had admitted after his father's death that the account belonged to the estate.

In the case of *In re Estate of Gibbons* (1978), 65 Ill. App. 3d 314, 382 N.E.2d 585, an uncle had lived with his niece and her husband for 10 years and had his niece sign signature cards for two joint tenancy bank accounts. In regard to one account, the niece periodically posted the interest in the account book and treated the interest as hers for income-tax purposes, while she did nothing of that nature in regard to the other account; she conceded at trial that the latter account might have been created for convenience purposes. The trial court agreed and held the latter account belonged to the estate. The appellate court reversed, indicating the niece's lack of control over the second passbook and her lack of knowledge as to why the account was created was insufficient as a matter of law to overcome the presumption of donative intent.

Citing *Abbot, Friedman* and *Guzak*, petitioner maintains the relationship between the size of the estate and the sums in the survivorship account bears upon the likelihood of donative intent. In *Abbot*, the court indicated a donative intent on the part of the decedent was lacking because he would have been unlikely to have wanted one heir to receive almost all of his assets. Here, if respondent is entitled to the approximately $90,000 represented by the two CDs, some $500,000 will still be available to distribute to the four children. The decedent could well have intended to favor the child closest to her by giving him the two CDs while still giving substantial benefits to the others.

Unlike in the cases cited by petitioner, no direct indication is given here that the decedent had any reason to place respondent's name on the CDs for her convenience. She had a checking account which she used to pay her bills. She permitted respondent access to that account for purposes of handling her affairs. Thus, the only evidence giving any indication of lack of donative intent upon the part of the decedent is the evidence he exercised no control over the CDs and the fact he did not consider he was the owner. While those factors

have been held in some cases to be of significance, no case has been called to our attention where those factors have alone been held to be sufficient to support a determination the account is an asset of the decedent's estate. Quite often a person creating a joint account as a gift may hope the donee, joint owner, will not use the asset until the death of the donor and, thus, keep knowledge and control of the account from the donee, while one creating such an account for his or her convenience will give the joint owner more knowledge about, and control over, the account.

In any event, the *Gibbons* court held that lack of knowledge upon the part of the surviving joint tenant of the existence of a gift and lack of control over the instruments of ownership failed, as a matter of law, to support a determination no gift was made. We deem that to also be the case here.

■ As we have stated, we need not pass on the question of whether the court erred in admitting into evidence portions of respondent's discovery deposition. Supreme Court Rule 212 provides, as petitioner has stated, discovery depositions may be used "as an admission made by a party." (See 107 Ill. 2d R. 212(a)(2).) The hearsay exception of an admission by a party opponent involved here does not require that the admission be against the interest of the party, and any relevant admission is admissible. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802.1, at 525 (4th ed. 1984).) We note the statements contained in respondent's discovery deposition admitted certain matters which were relevant to the issue of the donative intent of the decedent.

For the reasons stated, we reverse the judgment from which appeal is taken.

Reversed.

KNECHT, P.J., and McCULLOUGH, J., concur.