*In re* ESTATE OF WILMAH F. RYBOLT, Deceased (James Parks, as Adm'r, *et al.*, Petitioners-Appellants, v. Trevor E. Leach, Respondent-Appellee).

Fourth District   No. 4—93—0610

Argued January 25, 1994.—Opinion filed March 11, 1994.

COOK, J., concurring in part and dissenting in part.

Kirtley E. Wilson and Darrell E. Statzer, Jr. (argued), both of Wilson, Dyar, Moss & Statzer, of Decatur, for appellants.

Darrell A. Woolums (argued) and Edward Q. Costa, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee.

JUSTICE LUND delivered the opinion of the court:

This is an appeal of an order of the circuit court of Macon County denying a petition for accounting and constructive trust. Respondent Trevor Leach was granted power of attorney over his grandmother's finances eight months prior to her death. During this time, the bulk of her assets was transferred into joint tenancy accounts with right of survivorship or payable on death (POD) certificates of deposit (CDs). Respondent, who would not have inherited anything under her will, gained control of nearly all her assets upon her death in February 1992. The trial court found that respondent had not breached his fiduciary duty and denied the petition for a constructive trust. On appeal, petitioners contend the trial court's decision was against the manifest weight of the evidence because the transactions creating the joint and POD accounts were presumptively fraudulent and respondent failed to rebut this presumption.

The trial court's order merely states that having considered the evidence and written arguments of counsel, it finds in favor of respondent. No clue is given as to the particular reasoning or set of facts underlying the court's decision. A brief recitation of the facts follows.

The decedent, Wilmah Rybolt (sometimes spelled Wilma), lived with her granddaughter and her granddaughter's husband, Faye and James Parks, from 1987 until June 1991. James was appointed executor of Wilmah's estate, but neither James nor Faye is a legatee under the will. According to Trevor, Wilmah was not allowed to answer the phone while living with Faye and he was not allowed to visit with her. James Parks denied this was true. Wilmah moved out on her own volition and moved in with Trevor, his wife, and child. Trevor did nothing to suggest or encourage this move.

On July 1, 1991, Wilmah accompanied Trevor to the Bank of

Maroa to change the name on her checking account from "Wilmah Rybolt c/o Faye Parks" to "Wilmah Rybolt c/o Trevor Leach POA." The following day, Wilmah granted Trevor her power of attorney. Sometime later, Wilmah and Trevor went to the First National Bank of Decatur and directed that the name on a CD valued at $20,000 be changed to "Wilmah Rybolt, Trevor Leach POA." After it matured, they returned to the bank and used the proceeds to purchase a $20,000 CD under the name of "Wilmah Rybolt POD Trevor Leach." A bank official, Patricia Watkins, testified that she made certain Wilmah understood exactly what she was doing and had another bank employee witness the explanation. She did not hear Trevor instruct Wilmah as to how the account should be set up. She also stated that with someone like Wilmah she consistently explains joint ownership of an account, to be certain the transaction is completed as desired.

Another grandson of the decedent, Gary Rybolt, testified that despite her advanced age, Wilmah was still very active. He visited her at Trevor's home seven or eight times and when asked if he ever heard Trevor trying to exert influence over her, he replied that "you didn't tell grandma a whole lot. You listened. That's the way I was brought up." He saw no indication that she had become feebleminded. Gary's testimony was given in spite of the fact that he was a beneficiary under Wilmah's will.

Wilmah lived with Trevor and his family until she was hospitalized on February 13, 1992. Her age was in the high nineties when she died at the hospital on February 27, 1992.

At the time Wilmah moved to Trevor's home, the evidence indicates she had accounts or CDs totaling approximately $62,000. There was approximately $22,000 in an account at the Bank of Maroa. There were two $20,000 CDs at the First National Bank of Decatur. One of these $20,000 CDs was converted to a POD CD in the names of Wilmah and Trevor. The other $20,000 CD was eventually deposited in the Bank of Maroa account which listed Wilmah with Trevor as her power of attorney.

On July 22, 1991, $20,000 was transferred from the original account at the Bank of Maroa to a new account at the same bank. This account also listed Trevor as power of attorney. The $20,000 CD (not POD to Trevor) matured on January 7, 1992, and the funds were deposited in the original account at the Bank of Maroa.

According to Trevor, he became concerned that Wilmah's money was not earning a reasonable rate of interest. He contacted Alan Fagan, a securities broker with Edward D. Jones & Company (Edward D. Jones), in early January 1992. Fagan visited Trevor's home and made a presentation regarding investments that would offer a better

rate of return than her bank accounts and CDs. He sat at the kitchen table and spoke with Trevor about the investments. Wilmah was in the room, sitting 10 to 15 feet away. Trevor supplied all necessary application information and a joint account was set up, with both their names, with right of survivorship. Both Wilmah and Trevor signed the application, and Fagan explained that the account was being set up as a joint tenancy account. An initial investment of $20,200 was made.

The $20,200 for the Edward D. Jones investment came from the original Bank of Maroa account and the check (incorrectly dated January 16, 1991, rather than 1992) was signed by Trevor. An additional $10,000 was deposited into the Edward D. Jones investment on February 14, 1992, by a check drawn by Trevor on the more recent account at the Bank of Maroa. This was the day after Wilmah was hospitalized. On February 12, 1992, $5,000 from the more recent account at the Bank of Maroa was transferred by a check signed by Trevor to an investment with Shearson-Lehman Brothers (Shearson-Lehman), which was listed as Wilmah Rybolt and Trevor Leach, joint tenants with right of survivorship. In summary, at the time of Wilmah's death on February 27, 1992, the two accounts at the Bank of Maroa totaled approximately $7,000. These accounts listed Trevor as power of attorney and, regardless of the fact that the back of the signature cards contained a provision for survivorship, we consider the accounts belonging to Wilmah's estate. Somewhere in excess of $55,000 of investments were held jointly by Wilmah and Trevor with right of survivorship.

The trial judge refused to allow evidence of prior gifts by Wilmah to other members of the family. He also sustained objections, based upon the Dead Man's Act (Act) (Ill. Rev. Stat. 1991, ch. 110, par. 8—201), to testimony of the Edward D. Jones representative who made the presentation in January 1992.

■ Once the power of attorney was executed, Trevor was responsible as a fiduciary to Wilmah. (*White v. Raines* (1991), 215 Ill. App. 3d 49, 59, 574 N.E.2d 272, 279.) A presumption of fraud attaches to a transfer by a fiduciary for his or her own use, and this presumption is only overcome by clear and convincing evidence. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 464, 448 N.E.2d 872, 877-78.) When a joint tenancy with right-of-survivorship interest is created, a presumption of donative intent exists, and this presumption can only be rebutted by clear and convincing evidence. *Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 590-91, 202 N.E.2d 470, 472.

We have an interesting conflict of presumptions in this case. Our

court in *In re Estate of Harms* (1992), 236 Ill. App. 3d 630, 640, 603 N.E.2d 37, 44, held that where such conflicting presumptions exist they cancel each other out, leaving the trial court free to make a determination based upon facts and credibility of the witnesses. In *Harms*, the argument related to accounts which were created prior to the fiduciary relationship and also involved income from other sources being deposited to the joint accounts while the fiduciary relationship existed. In holding for the fiduciary, our court recognized that the deposits to the accounts followed a procedure used prior to the fiduciary relationship. *Harms*, 236 Ill. App. 3d at 640, 603 N.E.2d at 45.

For guidance, we look to the decision in *Franciscan*. That decision recognizes the amount of evidence needed to meet a presumption varies depending upon the circumstances of each case. (*Franciscan*, 95 Ill. 2d at 463, 448 N.E.2d at 877.) In that case, a bequest to the attorney who wrote the will was at issue. Here, we have a grandchild who is taking care of an aged grandmother who has given him a power of attorney.

■ We conclude the facts here require strong evidence to overcome the presumption of fraud. As more of our population become aged, more will need financial assistance. Unfortunately, greed and the temptation to benefit oneself will exist. If the presumption of fraud can be offset by a presumption of donative intent through joint tenancy with right of survivorship, then greed will often win out. We deem it necessary to hold in this case that the presumption of donative intent as to creation of the Edward D. Jones survivorship account and the Shearson-Lehman investment was outweighed by the presumption of fraud—that presumption requiring more evidence to overcome.

The trial court's decision as to the $20,000 CD at the First National Bank of Decatur was obviously based upon testimony of the bank employees. That decision was not against the manifest weight of the evidence.

The $10,000 deposit to the Edward D. Jones account one day after Wilmah was hospitalized was done by Trevor from funds in an account where he held a power of attorney. This transfer to his benefit created a presumption of fraud which cannot be rebutted under the facts. No presumption of donative intent can arise where the fiduciary makes a deposit of trust funds to a preexisting joint account. There is no evidence available as to Wilmah's approval.

The $5,000 investment with Shearson-Lehman as joint tenancy with right of survivorship must also fail, because Wilmah was not involved in creating the joint tenancy and the funds came from the

account where Trevor held a power of attorney. This was a presumed fraud and was not refuted. The principal and income from both the $10,000 and $5,000 must be awarded to Wilmah's estate.

We also find insufficient evidence to rebut the presumption of fraud in the initial $20,200 investment with Edward D. Jones. On cross-examination, respondent tried to elicit evidence from Fagan that Wilmah had been advised of the nature of the investment and the fact that it would be held in joint tenancy. Objections were properly sustained on the basis that respondent's questions called for conclusions. The record is also replete with objections made under the Act, which the trial court erroneously sustained. However, the record is unclear whether objections under the Act played any role in obstructing this crucial testimony regarding what Wilmah was told about the account. Our review of the record indicates respondent did not fully inquire into this issue, nor was any attempt made to preserve an objection to an erroneous court ruling through an offer of proof. Accordingly, the investment must be awarded to the estate.

We affirm the trial court's ruling as it applies to the $20,000 CD at the First National Bank of Decatur. We reverse the ruling as it applies to the initial $20,200 investment in the Edward D. Jones account, as well as the $10,000 transfer to that account and the $5,000 transfer to Shearson-Lehman, and direct that judgment be entered in petitioner's favor for these amounts, plus interest earned on those investments.

Affirmed in part; reversed in part, and remanded with directions.

GREEN, J., concurs.

JUSTICE COOK, concurring in part and dissenting in part:

I agree the two accounts at the Bank of Maroa, although containing some joint-tenancy language, were not joint-tenancy accounts. The accounts describe Trevor as holding a power of attorney, which is inconsistent with the idea that he possesses any interest as a joint tenant. I agree that the transfers from individual funds of $10,000 on February 14, 1992, and $5,000 on February 12, 1992, which Trevor accomplished by virtue of his power of attorney, did not result in a joint tenancy. One holding a power of attorney may not use that power for his own personal benefit, and no presumption of donative intent arises when the attorney does so. I also agree that the $20,000 CD at First National Bank, held in the names "Wilmah Rybolt, POD Trevor Leach," was held in joint tenancy and is now the property of Trevor. I disagree that the origi-

nal deposit of $20,200 to the Edward D. Jones joint account was not held in joint tenancy and is not the property of Trevor.

There are too many presumptions dealing with gifts and bank accounts, and many of them are conflicting. In the long run it must be the trial court which decides whether the case before it is one where the decedent's wishes should be respected, or one where a fiduciary has taken advantage of a decedent. The many presumptions in this area often interfere with the trial court making that decision, or worse, convince the trial court that it need not attempt to make a decision. This case should not be decided on the basis of which presumption was stronger than the other. As to the argument that the presumption of fiduciary fraud outweighs the presumption of donative intent inherent in the creation of a joint tenancy, *Murgic* (31 Ill. 2d at 589, 202 N.E.2d at 471-72) held that the presumption of donative intent itself could only be overcome by strong evidence— clear and convincing evidence that a gift was not intended.

Finally, I disagree with the implication that the $20,000 CD at First National Bank may only be upheld because of the persuasive testimony of the bank employees, and the indication that the $20,200 original investment in the Edward D. Jones account would have been upheld if more evidence had been admitted as to the decedent's intent. Those transactions were accomplished by decedent herself, not through any power of attorney. In the absence of any breach of fiduciary duty, the mere creation of a joint tenancy gives rise to the presumption of donative intent. (*Murgic*, 31 Ill. 2d at 589, 202 N.E.2d at 471-72.) "Public policy would seem to require the adoption by the courts of a more liberal and practical view of these common transactions." (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 66, 185 N.E.2d 850, 853.) The validity of a joint-tenancy account should not rest on the uncertain testimony of bank employees given long after the fact. It may be time for a reconsideration of *Murgic* and *Frey* but that reconsideration is not a proper task for this court.