NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 190460-U

NO. 4-19-0460

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 27, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.O., a Minor, | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County |
| Petitioner-Appellee, | ) | No. 17JA12 |
| v. | ) | |
| Trenton J., | ) | Honorable |
| Respondent-Appellant). | ) | Brett N. Olmstead, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HOLDER WHITE delivered the judgment of the court. Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court's unfitness finding was not against the manifest weight of the evidence.

¶ 2    On June 19, 2019, the trial court terminated the parental rights of respondent, Trenton J., as to his child, L.O. (born November 15, 2016).  On appeal, respondent argues the trial court's unfitness finding was against the manifest weight of the evidence.  For the following reasons, we affirm.

¶ 3                                 I. BACKGROUND

¶ 4                              A. Initial Proceedings

¶ 5                              1. *Respondent Mother*

¶ 6    In February 2017, the State filed a petition for adjudication of wardship, alleging L.O. was neglected pursuant to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS

405/2-3(1)(b) (West 2016)), because respondent mother, Jennifer O., failed to "correct the conditions which resulted in a prior adjudication of parental unfitness to exercise guardianship and custody of the minor's sibling, [K.O.], in Champaign County case number 2016-JA-28." L.O.'s putative father, Troy C., was also named as a respondent. In March 2017, the circuit clerk's office issued a notice of publication to putative father, Troy C. and any unknown fathers of L.O., in the Champaign News-Gazette. At an April 2017 adjudicatory hearing, respondent mother stipulated to the petition. At a May 2017 dispositional hearing, the trial court found respondent mother unfit and unable to care for L.O.

¶ 7    In March 2018, the court dismissed Troy C. from the case as he was excluded as L.O.'s father. In September 2018, the State filed a motion for termination of respondent mother's parental rights. In October 2018, respondent mother surrendered her parental rights to L.O.

¶ 8    2. *Respondent*

¶ 9    On October 10, 2018, respondent filed a *pro se* petition to establish parentage of L.O. At the time, respondent was incarcerated in Shawnee Correctional Center. On October 25, 2018, the State filed an amended petition for adjudication of wardship, naming respondent as L.O.'s putative father. After genetic testing showed respondent to be L.O.'s biological father, the trial court, in January 2019, entered a judgment establishing respondent to be the father of L.O.

¶ 10    B. Respondent's Termination Proceedings

¶ 11    On January 17, 2019, the State filed a motion for termination of respondent's parental rights. The State alleged respondent was an unfit parent because he (1) was depraved where he had been criminally convicted of at least three felonies and at least one of the

- 2 -

convictions took place within the last five years (750 ILCS 50/1(D)(i) (West 2018)) (count I) and (2) failed to maintain a reasonable degree of interest, concern, or responsibility as to L.O.'s welfare (750 ILCS 50/1(D)(b) (West 2018)) (count II).

¶ 12                                    1. *Fitness Hearing*

¶ 13          In the spring of 2019, the trial court conducted a bifurcated hearing on the motion for termination of parental rights, first considering respondent's fitness.  Respondent appeared on April 15, 2019—the first day of the fitness hearing—in the custody of the Illinois Department of Corrections.  Respondent was released from prison on April 26, 2019.  On May 15, 2019, the court held the second day of the fitness hearing.  Over the two days, the parties presented the following relevant testimony.

¶ 14                           a. Respondent's Felony Convictions

¶ 15          The trial court took judicial notice of respondent's felony convictions.  On January 17, 2013, respondent pled guilty to theft from a person in Vermilion County case No. 12-CF-358.  On April 11, 2013, respondent pled guilty to possession of a stolen vehicle in Champaign County case No. 12-CF-2047.  On February 21, 2014, respondent pled guilty to theft in Champaign County case No. 13-CF-1467.  On December 20, 2016, respondent pled guilty to resisting a police officer in Champaign County case No. 16-CF-961.  On January 29, 2018, respondent pled guilty to possession of a weapon in Champaign County case No. 17-CF-1739.

¶ 16                                    b. Ruby Clark

¶ 17          Ruby Clark, a foster care case manager for Children's Home & Aid (CHA), testified she became the caseworker for respondent's case beginning in April 2018.  Clark testified her first contact with respondent occurred at an October 2018 court hearing. Respondent told Clark that he became aware L.O. might be his child in April 2018, when

respondent mother contacted respondent's former girlfriend via Facebook and told her there was a 50% chance respondent was L.O.'s father. In April 2018, respondent was incarcerated.

¶ 18    Respondent also told Clark he knew in November 2016 that respondent mother was pregnant, but she told him the baby died at the hospital. Respondent also told Clark that respondent mother's mother told respondent he was not allowed to go to the hospital. When asked whether respondent tried to confirm whether the baby died or not, Clark testified, "Not to my knowledge." Respondent told Clark that from April 2018 to October 2018, he had friends and family try to determine whether the baby died. Clark testified that once respondent became involved in the case, he expressed interest in L.O.'s welfare.

¶ 19    c. Kenneth J.

¶ 20    Kenneth J., respondent's father, testified to respondent being "a fine young man, [who] just got himself into trouble a little bit, nothing major." Kenneth J. testified respondent lived with him or a friend when he was not incarcerated. Kenneth J. described respondent as "an average young man, mild-mannered, respectable." Kenneth J. testified that when respondent was 18 years old, he obtained an order of protection against respondent after a verbal altercation where respondent failed to follow his house rules. However, Kenneth J. testified he allowed respondent to live with him while the order of protection was active.

¶ 21    Kenneth J. testified that prior to respondent's incarceration, respondent worked part-time at his cousin's barber shop, helping clean up and doing odd jobs. Kenneth J. testified that while respondent was in prison, he spoke with respondent on the telephone and that respondent talked about getting out and the steps he planned to take to get custody of L.O. Kenneth J. stated that respondent interacted well with his nieces and nephews.

¶ 22    d. Respondent

¶ 23        Respondent testified he was incarcerated at the Shawnee Correctional Center for 16 and a half months. While incarcerated, respondent testified he completed an adult basic education class that covered reading, writing, math, and science.

¶ 24        Respondent testified that in 2016 respondent mother informed him that she was pregnant. About two months after he found out respondent mother was pregnant, respondent testified respondent mother's mother told him that respondent mother was in the hospital and that respondent could not visit because he was not immediate family. Respondent then testified he talked to respondent mother a few months later and that was when she informed him the baby died.

¶ 25        Respondent testified he learned L.O. was alive in March 2018 when Laquisha Savage told him respondent mother contacted her on Facebook. Respondent explained he then went to the prison law library to figure out how to establish paternity. Respondent testified he spoke with friends and family about locating L.O. but received no information from them. Respondent testified he was unaware L.O. was involved in a neglect case.

¶ 26        Respondent testified he received probation in Vermilion County case No. 12-CF-358. Respondent testified that a few months later he committed another felony in Champaign County case No. 12-CF-2047 where he served 90 days in jail and was placed on probation. Respondent stated that while on probation, he committed another felony in February 2014 in Champaign County case No. 13-CF-1467 where he served two years in prison. Respondent testified he committed another felony in December 2016 in Champaign County case No. 16-CF-961 where he was sentenced to probation.

¶ 27        Respondent testified he had changed since his imprisonment in 2013 and that he planned to put his family and others first. Respondent testified that once released, he planned to

engage in services through the Department of Children and Family Services, return to school, live a violence-free life, and give L.O. the best care he could.

¶ 28                                   e. Laquisha Savage

¶ 29          Savage, respondent's former paramour and friend, testified she had known respondent since 2017 and had been in a romantic relationship with him up until he was incarcerated. Savage testified respondent was never abusive during their relationship. Savage testified she communicated with respondent while he was in prison. Savage explained that respondent was "shocked" and "happy" when he learned that L.O. was alive.

¶ 30          Savage described respondent as kind and hardworking. Savage testified that during their relationship his employment consisted of "little side jobs, like washing cars, picking up trash, [and] helping other people." Respondent contributed $200 to monthly household expenses. Savage also testified respondent interacted well with her children.

¶ 31                                   f. Trial Court's Findings

¶ 32          Following the fitness hearing, the trial court found the State proved respondent unfit by clear and convincing evidence. On count I, the court found the State established a presumption of depravity where respondent had been convicted of at least three felonies and at least one of those took place within the last five years. The court then addressed whether respondent rebutted that presumption by countervailing evidence. The court found the evidence put forward by respondent included testimony that he had changed and that he took advantage of all opportunities in prison, including the adult basic education class. However, the court stated, "One of the things that troubles me about the evidence that was presented to rebut the presumption that arose was that it sets the bar so low for the expectations of the conduct of a

young man." The court found the State proved by clear and convincing evidence that respondent was depraved under the Adoption Act.

¶ 33    Regarding count II, the trial court found respondent could have taken additional steps to confirm whether L.O. died but instead respondent failed to take any action and took respondent mother's word at its face. The court stated, "I think [respondent's] action in walking away and keeping his back to that whole situation until he was in prison and that information came to him, I think that's the lack of a reasonable degree of interest, concern or responsibility as to the child's welfare."

¶ 34    On May 15, 2019, the trial court entered a written order finding respondent unfit.

¶ 35                    2. *Best-Interest Hearing*

¶ 36    On June 19, 2019, the trial court held a best-interest hearing. The court considered the record and best-interest reports from CHA and Court Appointed Special Advocates. After hearing testimony from respondent and recommendations from counsel, the court found it was in L.O.'s best interest to terminate respondent's parental rights.

¶ 37    This appeal followed.

¶ 38                    II. ANALYSIS

¶ 39    On appeal, respondent argues the trial court's unfitness finding was against the manifest weight of the evidence. We disagree and affirm.

¶ 40                    A. Standard of Review

¶ 41    The involuntary termination of parental rights involves a two-step process. 705 ILCS 405/2-29(2) (West 2018). First, the State must prove by clear and convincing evidence the parent is "unfit" as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006). If the trial court

makes a finding of unfitness, the State must then prove by a preponderance of the evidence it is in the child's best interest for parental rights to be terminated. *In re D.T.*, 212 Ill. 2d 347, 366, 818 N.E.2d 1214, 1228 (2004).

¶ 42 Only one ground for a finding of unfitness is necessary if it is supported by clear and convincing evidence. *In re Gwynne P.*, 215 Ill. 2d 340, 349, 830 N.E.2d 508, 514 (2005). We will not disturb a trial court's unfitness finding unless it is against the manifest weight of the evidence. *Id.* at 354. A finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.2d 123, 141 (2006).

¶ 43                                    B. Fitness Finding

¶ 44 The trial court found respondent unfit on two grounds: (1) depravity, where he had convictions for at least three felonies and at least one of the convictions took place within the last five years (750 ILCS 50/1(D)(i) (West 2018)) and (2) a failure to maintain a reasonable degree of interest, concern, or responsibility as to L.O.'s welfare (750 ILCS 50/1(D)(b) (West 2018)). We turn first to the issue of depravity.

¶ 45 One of the grounds for unfitness is depravity. 750 ILCS 50/1(D)(i) (West 2018). Section 50/1(D)(i) of the Adoption Act states, "There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies *** and at least one of these convictions took place within 5 years of the filing of the petition *** seeking termination of parental rights." 750 ILCS 50/1(D)(i) (West 2018).

> "A rebuttable presumption creates 'a *prima facie* case as to the
> particular issue in question and thus has the practical effect of
> requiring the party against whom it operates to come forward with

evidence to meet the presumption.' [Citation.] However, once evidence opposing the presumption comes into the case, the presumption ceases to operate, and the issue is determined on the basis of the evidence adduced at trial as if no presumption had ever existed. [Citation.] The burden of proof does not shift but remains with the party who initially had the benefit of the presumption. [Citation.] The only effect of the rebuttable presumption is to create the necessity of evidence to meet the *prima facie* case created thereby, and which, if no proof to the contrary is offered, will prevail." *In re J.A.*, 316 Ill. App. 3d 553, 562-63, 736 N.E.2d 678, 686 (2000).

¶ 46    "The amount of evidence that is required from an adversary to meet the presumption is not determined by any fixed rule.  A party may simply have to respond with some evidence or may have to respond with substantial evidence.  If a strong presumption arises, the weight of the evidence brought in to rebut it must be great." *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 463, 448 N.E.2d 872, 877 (1983).

¶ 47    The Illinois Supreme Court has defined "depravity" as "an inherent deficiency of moral sense and rectitude." *Stalder v. Stone*, 412 Ill. 488, 498, 107 N.E.2d 696, 701 (1952).

¶ 48    In this case, there is no question that the State presented sufficient evidence to give rise to the rebuttable presumption that respondent was depraved.  The State submitted to the trial court respondent's five prior felony convictions with the last conviction occurring in 2018. The court took judicial notice of respondent's felony convictions.

¶ 49    The burden of persuasion then shifted to respondent to rebut the presumption that he was depraved. See *Franciscan Sisters*, 95 Ill. 2d at 462. Respondent offered some evidence to counter the depravity allegation. Specifically, respondent provided evidence that he (1) successfully completed an adult basic education class while in prison; (2) took steps to establish his parentage of L.O.; (3) had changed since his imprisonment in 2013 and planned to put his family first once out of prison; and (4) planned to live a violence-free life, return to school, and provide L.O. the best care he could.

¶ 50    While respondent presented some evidence, we find it insufficient to rebut the State's presumption of depravity. We agree with the trial court that the evidence presented by respondent to rebut the presumption "sets the bar so low for the expectations of the conduct of a young man." Essentially, the trial court rightfully expressed concern that the evidence respondent put forth lacked the strength and significance to rebut the presumption. The evidence respondent presented failed to show that he was rehabilitated and no longer depraved where much of the evidence presented consisted of respondent's future aspirations that he had not yet achieved at the time of the fitness hearing. See *In re Shanna W.*, 343 Ill. App. 3d 1155, 1167, 799 N.E.2d 843, 852 (2003) (Rehabilitation can only be shown by a parent who leaves prison and maintains a lifestyle suitable for parenting children safely.).

¶ 51    Our case is distinguishable from *In re J.A.*, 316 Ill. App. 3d at 563, where the parent in that case rebutted the presumption of depravity by showing he completed numerous services and consistently visited with his child. Here, respondent had never met L.O., much less engaged in services to obtain custody and guardianship of L.O. Rather, respondent had been in and out of prison since the age of 18, and, at the time of the fitness hearing, respondent was 25 years old.

¶ 52 Based on the evidence presented, we find the State proved by clear and convincing evidence respondent was depraved under section 50/1(D)(i) of the Adoption Act. 750 ILCS 50/1(D)(i) (West 2018). Accordingly, we conclude the trial court's finding of unfitness was not against the manifest weight of the evidence. Because we have upheld the trial court's finding as to one ground of unfitness, we need not review the other ground. See *In re D.H.*, 323 Ill. App. 3d 1, 9, 751 N.E.2d 54, 61 (2001). Thus, we affirm the trial court's judgment.

¶ 53                                    III. CONCLUSION

¶ 54 For the foregoing reasons, we affirm the trial court's judgment.

¶ 55 Affirmed.