(No. 12487.—Order affirmed.)
THEODORE H. WUNDERLICH, Exr., Defendant in Error,
vs. HANS BUERGER, Plaintiff in Error.

Opinion filed April 15, 1919.

1. WILLS—*when presumption of undue influence arises.* Where a person bearing a confidential relation to a testator has himself prepared a will by which he receives a substantial benefit, these facts, unexplained, raise a presumption that the will was procured by undue influence of such beneficiary, but the presumption arises out of the fact that the beneficiary prepared the will and not because of the fiduciary relation.

2. SAME—*evidence offered in rebuttal may be received although properly admissible in first instance.* Where evidence properly admissible in the first instance is offered in rebuttal it is within the sound discretion of the court whether it shall be received, and the exercise of such discretion will not be reviewed nor will it be held that there has been an abuse of such discretionary power unless some injury has been occasioned.

3. SAME—*what proof sufficient to overcome presumption of undue influence.* While the amount of proof required to overcome the presumption of undue influence arising from the preparation of a will by a beneficiary bearing a fiduciary relation to the deceased depends upon the circumstances of each case, yet where the evidence is convincing that the instrument is the free expression of the wish of the testator the legal presumption of undue influence is overcome.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. GEORGE F. BARRETT, Judge, presiding.

SCHAFFNER & FRIEND, and ISAAC S. ROTHSCHILD, for plaintiff in error.

THEODORE A. KOLB, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is a writ of error to review an order of the circuit court of Cook county admitting to probate the will of Henriette Boerner, who died in August, 1915, leaving as her heirs her nephews and nieces and the children of a deceased nephew, all of whom resided in Germany except

Hans Buerger, the plaintiff in error, who is a citizen and resident of Illinois. The will was dated October 5, 1914, was witnessed by Timothy D. Hurley and Henry G. Conrad, and was drawn by Theodore H. Wunderlich, who had been attorney for the testatrix's husband, Wunibald R. Boerner, prior to his death, which occurred August 7, 1912, and afterwards for Mrs. Boerner, individually and as executrix of his will. Wunderlich was named as residuary legatee. The value of the estate was about $30,000. The real estate, valued at $14,000, was devised to Fred Kaempfer, and there were legacies amounting to $8200, so that the residue of the estate amounted to about $8000, less the debts and expenses of administration. On a hearing the proponents introduced the evidence of the attesting witnesses and rested, and the plaintiff in error introduced the inventory of the estate made by the administrator to collect, and rested, and moved the court to refuse probate. Thereupon the proponents asked leave to introduce further evidence, and did introduce evidence of the relations existing between the testatrix and her nephews and nieces and the testatrix and Kaempfer and Wunderlich, and the plaintiff in error introduced evidence to controvert that of the proponents. The proponents then offered a series of letters written by the testatrix, to which plaintiff in error objected because they were not rebuttal, but the court overruled the objection and admitted the letters. The admission of these letters and the admitting of the will to probate are the errors relied on for reversal.

Mrs. Boerner was born in Germany about 1845. She had two sisters, one of whom, Louise Buerger, died in 1881, leaving three children, Max Buerger and Louise Margaretha Klickerman, of Germany, and the plaintiff in error, who is a resident of Chicago. The other sister, Marie Jaeger, died a resident of Germany in 1913, leaving four children and three children of a deceased child. The testatrix moved to America in 1878, married and lived in

Chicago, where her husband and his father engaged in the wire-working business and eventually came to manufacture bird cages, her husband continuing the business after his father's death. In 1895 they bought about three acres of land in Ravinia, to which place they moved and where they lived until her husband's death. Afterward Mrs. Boerner occupied the home a part of the time until her death. The Boerners had six children, all of whom died before the death of Boerner. The product of the Boerners' business was sold to Fred Kaempfer, whose family was intimate, socially, with the Boerner family. This intimacy continued after the death of Boerner. Kaempfer became the business adviser of Mrs. Boerner and attended to the management of her husband's estate for her as executrix and of her personal estate and business. Mrs. Boerner could speak and understand the English language though not so well as the German language. She wrote a great many letters in German to Kaempfer and to her relatives, and while some of these letters as translated are not very coherent, yet taking them altogether they show that she understood very well her family relations, and thought, as her husband had told her, that it were better for her to throw her money into the lake than to give it to members of her family; that it only caused dissension when given to members of her family. The letters also show a high degree of affection for Kaempfer and the members of his family and a deep appreciation of the interest he took in her business affairs and of the things which he did, apparently of his own volition, to add to her comfort and happiness. They also show that by reason of her loneliness she was appreciative of attention, and that she gradually arrived at the conclusion that her relations were not entitled to much consideration from her, reaching this conclusion from the requests made of her for money by her relatives and letters from them, from which she got the idea that they were quarrelsome and to some extent untrustworthy. Some time

about 1881 the Boerners, who then had several children of their own, caused Mrs. Boerner's nephew, Hans Buerger, and his sister, Louise Margarethe, and a daughter of her other sister, to come to America, paying their traveling expenses and taking them into their home with a view to educating them and receiving help in their work from them. The arrangement proved unsatisfactory and the girls returned to Germany while Hans remained in Chicago, but the Boerners seem not to have known that he remained in America and to have lost track of him until some time after the death of Boerner, when Hans Buerger's wife called on Mrs. Boerner. From this call and others, and some acts of kindness done by Mrs. Buerger to Mrs. Boerner, after the execution of the will, Mrs. Boerner seems to have conceived a liking for her nephew's wife, though it was only a short while before her death that she again became friendly with her nephew, who was a postman, with hours of work which prevented him visiting his aunt with his wife.

By her will Mrs. Boerner gave a legacy of $1000 to Kaempfer's wife; $500 to Wunderlich's wife; $500 to Hans Buerger; $500 to each of three of her heirs in Germany, and legacies of various amounts, from $100 to $500, to nineteen persons living in Chicago and Ravinia. As to some of these there is evidence to show that they were her close friends or had rendered some service for her, and as to others there is no evidence.

Henry G. Conrad, one of the witnesses to the will, was a lawyer, with an office in the same suite as that of Wunderlich. He sat in his office about fifteen feet from Wunderlich and twelve feet from Mrs. Boerner on the day the will was executed. There was a partition, partly of glass, between. Both offices opened upon the same small reception hall. He testified that Wunderlich read the will to Mrs. Boerner in English and translated it into German to her; that witness heard him do so and knew the contents of the will from hearing it read and translated; that Mrs.

Boerner then called witness and asked him to witness the will. The other witness, Hurley, was also a lawyer with an office in the same building, who was called by Wunderlich. When he entered, Mrs. Boerner said, in response to his questions, that the will had been read to her; that she understood it and had given directions as to how it should be drawn. The will was thereupon properly executed and witnessed.

The statute provides that the testimony of two subscribing witnesses shall be sufficient to admit the will to probate, provided that no proof of fraud, compulsion or other improper conduct be exhibited which in the opinion of the court is deemed sufficient to invalidate it. The cross-examination of Conrad developed the confidential relation existing between Wunderlich and Mrs. Boerner; that he had represented the estate of her husband and she had called frequently at his office during two years,—a part of the time every week or two,—consulting and advising with him as her attorney in reference to the estate and the buying of property. Where a person holding such a confidential relation to a testator has himself prepared a will by which he receives a substantial benefit, these facts, unexplained, sustain the charge that the will was procured by the undue influence of such beneficiary. (*Weston* v. *Teufel,* 213 Ill. 291; *Leonard* v. *Burtle,* 226 id. 422; *Yess* v. *Yess,* 255 id. 414; *Gum* v. *Reep,* 275 id. 503; *Snyder* v. *Steele, ante,* p. 159.) To rebut the legal presumption of undue influence arising from these facts the additional evidence was first introduced by leave of the court after the proponents and the plaintiff in error had both rested their cases. The object of introducing the letters which were offered after both parties had again rested was the same. The letters were not in rebuttal of the evidence of plaintiff in error and might have been rejected for that reason, but they were competent evidence on the issue. Where evidence properly admissible in evidence in the first instance

is offered in rebuttal it is within the sound discretion of the court whether it shall be received, and the exercise of such discretion will not be reviewed. It will not be held that there has been an abuse of such discretionary power unless some injury has been occasioned. *City of Sandwich* v. *Dolan,* 141 Ill. 430; *Hartrich* v. *Hawes,* 202 id. 334.

The evidence shows that Mrs. Boerner had great respect for Wunderlich and complete confidence in him. She more than once stated that she intended to remember him in her will. From her feeling in regard to her relations, from whom she had been separated for so many years, and from her regard for Wunderlich, it cannot be regarded as unlikely or at all out of the ordinary that she should make a liberal bequest to him. His treatment of her which won her regard did not constitute undue influence and there is no evidence of actual undue influence. The existence of a fiduciary relation between a testator and a legatee does not raise a presumption of undue influence in the case of a will as in the case of a deed. (*Michael* v. *Marshall,* 201 Ill. 70; *Pilstrand* v. *Swedish M. E. Church,* 275 id. 46.) The presumption in this case arises only out of the fact that the defendant in error prepared the will by which he benefited. The strength of the presumption and the amount of proof required to overcome it must depend upon the circumstances of each case. In the case of a testator who in feeble health, disregarding the claims on his consideration of his family or of dutiful, affectionate, needy and worthy relatives with whom he has been upon familiar and affectionate terms, devises all his property to a confidential adviser, who, alone with the testator, prepares the will and supervises its execution, the degree of proof required to overcome the presumption will be much greater than in the case of one having no near relatives with whom he is on intimate terms, who in good physical and mental health goes to his legal adviser and has him prepare his will excluding his relatives from participation in his estate and

disposing of his property to strangers to his blood but persons with whom he has had kindly and friendly relations and whom he has expressed the intention of remembering in his will. In any event, the evidence must be such as under the circumstances is convincing that the instrument is the free expression of the wish of the testator and not of the will of the fiduciary.

It appears that Mrs. Boerner had made a prior will but that after the death of her only surviving sister she desired to change her will. In a letter to Kaempfer on March 28, 1914, she says that she desires to make her testament but does not understand how to compose it. She intended to make the will for some months before it was actually executed.. The evidence shows that she had frequently expressed an intention to remember Wunderlich and Kaempfer in her will; that after the death of her sister she did not regard her nephews and nieces as having any special claim upon her. The will was prepared by her attorney, whom she would naturally consult. It does not appear when it was prepared, but it was not executed until months after she had expressed a desire to make it, although she saw her attorney frequently in the meantime. She stated to the attesting witnesses that the will had been explained to her and she understood it, and it was further shown that the will was actually read over to her and she said that it was all right; that it satisfied her; that it was what she wanted. Her relatives were not ignored in the will. She made bequests to such as she deemed best. About half of her estate she gave to Kaempfer, about one-fourth to other persons, including her relatives to whom she desired to make bequests, and the residue to the defendant in error. The circuit court was justified, upon a consideration of all the evidence in the case, in holding that the legal presumption of undue influence had been overcome and in admitting the will to probate.

The order will be affirmed.

*Order affirmed.*