(No. 34599.— ▮▮▮▮▮▮▮▮▮)

FLOYD WILLIAM SCHRAMM, Appellant, *v.* ALBERT RAY
SCHRAMM *et al.,* Appellees.

*Opinion filed March 20, 1958.*

WALTER T. DAY, of Springfield, for appellant.

BARBER & BARBER, of Springfield, (CLAYTON J. BARBER,
and ALTON G. HALL, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

On October 10, 1951, a complaint was filed in the
circuit court of Sangamon County by Floyd William
Schramm seeking to set aside the wills of his father and
mother, William F. Schramm and Ida May Schramm, as
clouds upon his alleged title to certain Sangamon County
farm land, (which he contends was given to him by his
parents many years prior to their deaths), or in the alterna-
tive to impress an equitable lien upon the premises for the
value of permanent improvements he had made thereon.
His niece and nephew, Edna J. Keeney and Albert Ray
Schramm, the remaindermen named in said wills, were
made party defendants, and the matter was referred to a
master who, after taking the evidence, found for the de-
fendants and recommended that the complaint be dismissed

for want of equity. Objections thereto were subsequently overruled and a decree thereafter entered in accordance with those findings. A freehold being involved, direct appeal has been taken to this court.

The real estate owned by William and Ida Schramm consisted of six adjoining 40-acre tracts which lay in the shape of a huge "L", four running from west to east and two extending to the south. The corner 40-acre parcel contained the family dwelling and was itself divided into the east 5 acres, the south 8 acres, and the north 27 acres. The property now in question, a 125-acre tract which, for convenience, will be called the "East farm," is composed of the 5-acre field and the three easterly 40-acre parcels. The remaining 115 acres, hereinafter referred to as the "West farm," is made up of the 8-acre, the 27-acre, and the two southerly 40-acre areas. Title to the East farm, except the easterly 40 acres thereof, was acquired in 1911 by Ida and William Schramm as tenants in common of a 3/7th and a 4/7th interest, respectively, and in 1934 the balance of this property was deeded to them as equal tenants in common. The West farm, except the northerly 27 acres, was solely owned by William Schramm until 1936 at which time he conveyed an undivided one-half interest therein to his wife, the 27-acre strip having been purchased in 1925 by him and his wife as tenants in common of an equal interest. From the date of said conveyances until their respective deaths in 1942 and 1949, record title to these properties remained unchanged in Ida and William Schramm. By their reciprocal wills, which were executed in 1936 and probated in 1949 after the death of the survivor, each of the parents left a life estate to the other, then provided: (1) that fee to the West farm should devolve upon their son, Fred Schramm; (2) that plaintiff, Floyd Schramm, take a life estate in the East farm with the remainder to the children born to plaintiff after January 15, 1936, and, if there be no children born after that date, then the said remainder was to vest in

the children of Fred Schramm. Additionally, the remainder interests in the East farm were made subject to a life gift of ⅓ of the income to plaintiff's wife, Ruth Schramm, in the event she survive the plaintiff and not remarry. When both testators died, and at the present time, plaintiff had no children born after the date fixed in the wills; Fred Schramm, on the other hand, had a son and daughter, the defendants to the present suit.

Plaintiff and his brother, Fred Schramm, were the only children of William and Ida and, prior to their own marriages, lived and worked on their parents' land. Sometime prior to 1926, plaintiff married, a son being born of such union, but he returned to his parents' home when the marriage ended in divorce. In 1926, plaintiff married his present spouse, Ruth Schramm, and moved with her into a dilapidated tenant house on the East farm, where they made many improvements necessary to make it habitable. Plaintiff farmed all that portion of the East farm then owned by the Schramms and, in addition, cultivated the northerly 15 acres of the West farm. Brother Fred continued to live with his parents and work the remainder of the West farm. On January 3, 1927, Fred also married and thereafter took up residence in the family dwelling upon the West farm, his parents having moved to a small house they had purchased in the nearby town of Waverly. Fred and Floyd continued to farm the same parcels they were originally allotted until the remainder of the East farm was purchased by their parents in 1934, at which time Floyd commenced to cultivate this acquisition, and Fred began farming the northerly 15-acre area. Taxes upon both farms were at all times paid either by or for William F. Schramm, and he continued to carry insurance thereon until after his wife's death in 1942.

The substance of plaintiff's complaint is that his parents divided their property in 1927, (at the time they moved from the farm home and took up residence in Waverly),

by giving plaintiff the East farm and Fred the West farm and that, although it was intended fee-simple title should pass on that date, no deeds were executed, but were promised for a later time, because the parents expected their sons to provide for them should they need assistance from time to time. In reliance upon such gift, the complaint continues, plaintiff and his wife added to the house, built a barn and other out-buildings, constructed new fences, and spent more than $15,000 in generally improving and rebuilding the East farm, all with the knowledge and approval of the donors. It is further alleged that plaintiff's mother died in 1942, leaving a will which was "lodged" with the county clerk of Morgan County; that plaintiff did not become aware of either the existence or the terms of said will until his father's death in 1949, when he learned for the first time that his parents had left similar wills giving him only a life estate in the East farm and devising the remainder as previously set forth; and that both wills were probated in Morgan County, the plaintiff and his wife filing claims of $1000 and $15,000 respectively, against the estate of William Schramm for improvements made to the East farm during their occupancy. In conclusion, the complaint prayed that the said wills be declared void as clouds upon plaintiff's title or, in the alternative, that an equitable lien in the amount of $15,000 be impressed on the East farm.

At the hearing on this cause, plaintiff and his wife, although incompetent to testify as to transactions with the decedents, (Ill. Rev. Stat. 1951, chap. 51, par. 2,) were allowed to describe facts surrounding their occupancy of the East farm and the various improvements they placed upon the premises. Plaintiff told of reconditioning the tenant house to make it habitable, how he and Fred farmed the land between them, and of the subsequent purchase by his parents of the east 40-acre tract. He admitted that he paid rent for the premises during 1926, that he had insured

the buildings only since 1942, and that, upon the acquisition of said 40 acres in 1934, he was required by his father to turn the northerly 15 acres of the West farm over to his brother Fred. He insisted that, except for these instances, he at all times operated the East farm as though it were his own. Various workmen described the improvements which were placed upon the property at the occupants' cost and told of frequently seeing the father about the premises. Marvin Piercy, plaintiff's hired man, testified that William Schramm had told him in 1943 that the East farm belonged to plaintiff and his wife, and Chester Boyd, the wife's nephew, swore that about 1928, when he was 9 years old, William Schramm stated to him that "he had given Floyd the place, and it was his to fix up as he saw fit, and that Fred had his place too, and if he did not fix it up it was his own fault." William Schramm's cousin, Elizabeth McClain, said both the father and the mother told her prior to their deaths that the sons had each been given a farm and that there would be no trouble over the land; a housekeeper employed by William Schramm's brother told of overhearing statements of the father during 1942-45 to the effect that Fred and Floyd had each been given a farm; Fannie Challans, a neighbor, testified that William Schramm had told her that plaintiff paid the taxes and that the East farm "will be Ruth and Floyd's place * * * this place is Floyd and Ruth's and the other is Adeline and Fred's and I want them to be happy after they get it fixed;" and a friend Juanita Hartley, swore that William Schramm had told her he had no need for a will since his farms had already been given to his boys. Similar statements were described by Allan Wood, Ashburn Smith, and Marion File, all friends of William Schramm.

For the defense, Fred Schramm testified his parents owned only the farms and the Waverly house in which they resided, and had no income or savings except that received from such real estate. He denied that he had ever been

given any interest in the land prior to his parents' death but stated that, at all times, he had farmed the West place under a verbal lease and that taxes were paid upon both farms by the father. In fact as a favor to his parents, Fred paid all the real estate taxes during the years 1929-33 and took credit therefor upon his unpaid rents which, in later years, ran either $5 or $8 per acre. He stated, however, that he had no knowledge of Floyd's farming arrangements. Richard Whalen, operator of the Waverly grain elevator, swore that on several occasions grain was brought to the elevator by Floyd or his hired man and that the proceeds thereof were paid by the witness to William Schramm. Anna Schramm, the father's sister-in-law and housekeeper, told of overhearing both Ida and William Schramm discussing the "rents" they were receiving from the East farm. Records of the United States Department of Agriculture were introduced into evidence showing that marketing reports signed by the plaintiff for the years 1944, 1945, and 1946, stated that William Schramm was the owner of the East farm and that plaintiff was the operator. Deposit slips of the Wemple State Bank at Waverly indicated that checks were drawn by plaintiff and deposited to his father's account at various times since 1940, ranging in the following amounts:

```
1940—$  250.00
1941—   165.00
1942—   625.00
1943—   600.00
1944—   625.00
1945—   625.00
1946—   625.00
1947—   500.00
1948—  1000.00
1949—   500.00
```

Plaintiff's income-tax returns for the years 1941 through 1949 were produced and showed that he claimed as a farm

expense for those years, "rents" in the sums of $625, $826, $925, $835.90, $625, $625, $500, $1000 and $750, respectively. Upon examination, plaintiff admitted that at least a portion of said rental deductions were amounts paid by him to his father for support, but swore that this was done upon the advice of a local Internal Revenue agent. Transcripts of the tax books for the years 1927-1948 indicated that taxes upon both the East and West farms were paid in the name of William F. Schramm except for the years 1932 and 1933 when Fred Schramm's name appeared thereon.

Evidence was also introduced to show that the wills of Ida Schramm and William Schramm were admitted to probate on November 18, 1949, upon the verified petition of the plaintiff and that plaintiff was appointed and thereafter acted as administrator of his father's estate. In this capacity plaintiff filed a verified inventory of his father's assets on January 4, 1950, in which he listed the East and West farms as being owned by William Schramm at the time of his death. Some nine months later plaintiff filed in the estate proceedings his sworn petition to sell the East farm to pay the debts of the decedent and therein made the following allegation:

> "That William F. Schramm, deceased, and his wife, Ida Mae Schramm, deceased, acquired title to said lands by purchase and inheritance and that William F. Schramm, by the will of Ida Mae Schramm, deceased, acquired a fee simple title to the above described real estate and had a fee simple title at the time of his death."

On May 25, 1950, the attorney for the father's estate wrote Fred Schramm to advise him that the taxes upon the "farms" were due and that Fred should pay his 1949 "rent" to the plaintiff so that this obligation could be paid. The sum of $550 was thereafter paid by Fred and accounted for in plaintiff's annual report to the court.

Plaintiff's complaint is based upon the theory that a gift of the East farm was made to him by his parents in

1927 and that they committed a fraud upon him by attempting to otherwise dispose of the property through their individual wills. It has many times been stated by this court that to establish a gift the proof must be clear and convincing, and the burden is upon the alleged donee to prove the existence of a donative intent. (*Hill* v. *Bowen,* 8 Ill.2d 527; *In re Estate of Schneider,* 6 Ill.2d 180; *Keshner* v. *Keshner,* 376 Ill. 354; *People v. Polhemus,* 367 Ill. 185; *Rothwell* v. *Taylor,* 303 Ill. 226.) Here the plaintiff has shown that he has been in exclusive possession of the property since 1926; that he has made valuable improvements thereon; and that many persons were told by the alleged donors that the East farm had been given to him. On the other hand, strong evidence was presented by the defendants to indicate a complete lack of donative intent. The East farm which plaintiff contends was given to him in 1927 was not totally acquired by the alleged donors until 1934 when they purchased the easterly 40-acre tract, and prior to that time plaintiff had been farming the northerly 15 acres of the West farm which had supposedly been given to his brother at the same time in 1927. Fred Schramm denies receiving any such gift, and the records show not only that Fred paid rent during his occupancy, but also that a considerable portion of the West tract was conveyed by William Schramm to his wife in 1936. In the same year both of the alleged donors executed wills in which they disposed of this property as their own, and the name of William F. Schramm was at all times carried upon the tax rolls. Plaintiff would have us believe that his parents gave up all their income-producing property some 15 years before either of their deaths and that they received their support and paid their taxes from moneys which were given to them by the plaintiff for those particular purposes; yet in his income tax returns he swore that such expenditures were for the payment of rent. The insurance upon the East farm buildings was procured and

paid for by the father until 1942; market reports were signed by plaintiff as operator of the farm in 1944, 1945 and 1946; plaintiff probated his parents' estates and listed the property as a part of his father's assets; and he also petitioned the court to sell the premises to satisfy his father's debts.

We do not see in this record the clear and convincing evidence needed to support a claim of gift. Rather, the facts would indicate that William and Ida Schramm sought to assist their sons by accepting only such rentals as were necessary to supply their needs and that the sons, in return, knew that this was their parents' intent. Fred testified that his rents ranged around $5 per acre and plaintiff's frequent payments of $625 per year to his father for his 125-acre tract tends to show a similar arrangement. It is no doubt true that statements were made by the parents to the effect that they had given a farm to each of their sons, but such is not necessarily inconsistent with their other acts or the provisions of their wills. Each of their children was given possession of a farm with leave to improve as they saw fit, and this same farm was given by will to that occupant. Of course, the West farm was given to Fred outright while plaintiff received only a life estate in the East place; yet in the eyes of a layman each could be considered as having received a farm. For reasons known only by themselves, the parents evidently sought to disinherit plaintiff's first son by making sure that he could in no event receive the property as their heir. Aside from this, the wills are not unlike many others which seek to keep property within the testator's direct line of descent. Admittedly, in prosecuting this action, plaintiff has relied heavily upon *Bale* v. *Bale,* 242 Ill. 519, where the court upheld an alleged verbal gift of land. However, in that case not only did the donee move upon and improve the premises, pay taxes in his own name, and rent a portion to a stranger, but also no facts were presented in evidence

290

which were contrary to the donee's claim. Since this is not the present situation, the *Bale case* is not controlling or persuasive here. It is our opinion that the lower court did not err in refusing to confirm plaintiff's alleged title.

Nor do we believe that plaintiff is entitled to an equitable lien. The improvements placed upon the property were constructed for the occupant's benefit, and plaintiff has received and will in the future, as the life tenant, continue to receive the advantages from those expenditures. There was no evidence presented showing the portion, if any, of the improvements which could be expected to pass to the remaindermen.

Plaintiff, in his brief to this court, has advanced the additional theories of adverse possession and verbal contract to convey. Suffice it to say that clear and convincing evidence, lacking here, is also required to sustain such claims. (*McIntyre* v. *McIntyre*, 287 Ill. 544; *Lambert* v. *Hemler*, 244 Ill. 254; *Schwartz* v. *Piper*, 4 Ill.2d 488; *Willis* v. *Zorger*, 258 Ill. 574; *Aldrich* v. *Aldrich*, 287 Ill. 213; *Galapeaux* v. *Orviller*, 4 Ill.2d 442.) For the reasons stated the decree of the circuit court of Sangamon County is affirmed.

*Decree affirmed.*