CHESTER J. SWIECICKI, as Guardian of the Estate of Daniel Swiecicki, *et al.*, Plaintiffs-Appellees, v. ROBERT R. SWIECICKI *et al.*, Defendants-Appellants.

Fifth District No. 5—92—0580

Opinion filed January 28, 1994.

Edward T. McCarthy, of Edwardsville, for appellants.

No brief filed for appellees.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

Defendants, Robert (Robert) and Paula (Paula) Swiecicki, appeal the trial court's order in which the court entered judgment against them and in favor of plaintiffs, Chester J. Swiecicki, Sr. (Chester), as guardian of the estate of Daniel Swiecicki, and Daniel Swiecicki (Daniel), in the amount of $20,000. It is noted that only one brief has been submitted; therefore, we review this case pursuant to the standards set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493. We affirm for the reasons set forth below.

Defendant raises two issues on appeal, to wit: (1) whether the trial court erred in finding that Chester had made a loan of $20,000, instead of a gift, to the defendants; and (2) whether the trial court erred in finding that the estate of Daniel Swiecicki made a loan of $20,000 to the defendants.

Chester filed a complaint, in his capacity as guardian of Daniel's estate, against defendants on December 11, 1989, alleging that he had loaned defendants $20,000, that he had demanded repayment of the $20,000, but that defendants had not repaid the loan. Defendants denied that the $20,000 was a loan and asserted that the money was a gift from Chester.

At the bench trial held on October 28, 1991, the following evidence was adduced: Robert testified that he is 48 years of age, is employed, and is married to codefendant Paula, and that Chester is his father. In September 1988, Robert and Paula were preparing to close on the purchase of a new home when it was discovered that there was a "judgment" against them. Consequently, they were unable to proceed with the purchase of the new home. Robert told his mother about the situation in a telephone conversation, and according to Robert, his mother said: "Don't worry about it. You come on over and things will be taken care of." Robert went over to his parents' home, and his mother handed him a cashier's check in the amount of $20,000. It was Robert's testimony that his father did not discuss repaying the $20,000 at that time.

Subsequently, at Christmas that year, there was a family argument. Robert stated that after that, he began to be "badgered" for the money. Chester asked Robert several times to return the money.

Robert stated that at the time his father gave him the money, his father was working part-time as a school crossing guard. To Robert's knowledge, his father's assets were "pretty substantial." In Robert's opinion, his parents were giving, loving people. Robert was aware

that his father handled Daniel's finances; however, he denied that he knew that the $20,000 had come from Daniel's estate when Chester had given him the money. It was not until the spring of 1989 that Robert learned that the $20,000 was Daniel's. Robert recalled that his brother Chester, Jr., had talked to him about the $20,000, and that his brother had given him a blank promissory note to sign; however, Robert did not sign it.

Robert testified that his parents had given him a $20,000 cashier's check on September 19, 1988. Robert was amazed at the amount at the time of the transaction, as he and Paula needed only $14,000 to pay off a loan. He further admitted that he had not repaid the $20,000.

Chester testified that he is 75 years of age, and that he is the father of Robert, Chester, Jr., and William. He is also Daniel's natural grandfather, as well as the guardian of Daniel's estate. In September 1988, Chester's wife told him that Robert needed money to buy a house, so he cashed in a $25,000 certificate of deposit (CD), which he held as guardian of the estate of Daniel, to obtain the $20,000 for Robert. He admitted that he handed Robert a cashier's check for $20,000, but he stated that the money came from Daniel's estate. According to Chester, when he gave Robert the cashier's check, he asked Robert when he would pay the money back. Robert responded that he would repay the money within 90 days, after they had sold their house. Robert did not repay the money in 90 days and had repaid nothing as of the time of trial. Chester admitted that he did not obtain a written note from Robert for the $20,000, but he stated he had asked Robert for repayment of the money repeatedly.

Chester stated on cross-examination that he had loaned his other son Chester, Jr., $5,000 from Daniel's estate in the past. Chester, Jr., had given him a promissory note when Chester had loaned the money. Chester, Jr., had repaid the $5,000 loan without interest. Also on cross-examination, Chester admitted that, although Daniel is now 22 years of age, he has not given Daniel the remainder of his estate. In 1987, there had been $106,000 in Daniel's estate, but at present, there was nothing remaining. In Chester's opinion, he felt he had the right to make loans to family members out of Daniel's estate without court approval.

Chester's other two sons, Chester, Jr., and William, also testified that they had talked to Robert about the $20,000. Both brothers testified that they gave Robert a promissory note to sign for the money, but that Robert refused to sign.

Paula testified that Chester contacted her by telephone regarding the repayment of the $20,000 in February or March of 1989. She stated that they never sold their original home, but that they had moved back into it after living in their new home for about 15 months. They sold the new home for $64,000, but there was an outstanding mortgage of $48,000. They used the profit from the sale to pay off other debts.

Earl Vaugniaux, the attorney who represented Chester in the guardianship matters, testified that the last annual report was filed in the guardianship case in 1987.

Following the hearing, the court entered an order that same day, directing Chester to file a final report in the guardianship case within 30 days. Chester was also directed to file a copy of the final report in this case and to submit a copy of the final report and the complaint in this case to Daniel.

On June 10, 1992, the court entered its order finding in favor of plaintiffs and against defendants. The court ordered that the $20,000 be paid directly to Daniel. Following the denial of defendants' posttrial motion, this appeal was filed.

■ The first issue raised by defendants on appeal is that the court erred in finding that the $20,000 given to defendants by Chester was a loan and not a gift. Defendants claim that there is a presumption of a gift whenever there is a transfer between a parent and a child and that the presumption can only be overcome by clear and convincing evidence, citing *Rasmussen v. LaMagdelaine* (1991), 208 Ill. App. 3d 95, 566 N.E.2d 864, *In re Marriage of Radae* (1991), 208 Ill. App. 3d 1027, 1032, 567 N.E.2d 760, 763, *In re Estate of Wilson* (1980), 81 Ill. 2d 349, 410 N.E.2d 23, and *Steiner v. Lawson* (1966), 71 Ill. App. 2d 392, 219 N.E.2d 121. We only note that there have been some conflicting opinions. (See *Schramm v. Schramm* (1958), 13 Ill. 2d 281, 148 N.E.2d 799; *Moniuszko v. Moniuszko* (1992), 238 Ill. App. 3d 523, 606 N.E.2d 468.) Even if we assume that a presumption of a gift has been raised by the defendants, it ceases to operate once contrary evidence is introduced. (*In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, 467 N.E.2d 962; *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872.) We need to examine the record, therefore, to determine if the trial court's finding of a loan rather than a gift was against the manifest weight of the evidence. *In re Marriage of Rosen* (1984), 126 Ill. App. 3d 766, 467 N.E.2d 962.

It is pertinent to this appeal to note the duties of a guardian, which are enumerated in the statute. (Ill. Rev. Stat. 1991, ch. 110½, par. 11—13.) The statute states:

> "Duties of guardian of a minor. The *court* shall have control over the person and estate of the ward. Under the direction of the court:
>
> ***
>
> (b) The guardian or other representative of the ward's estate shall have the care, management and investment of the estate ***." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 110½, par. 11—13(b).)

From the foregoing statutory language, it is clear that it is not the guardian but the court which has control or dominion over a ward's estate. Case law has likewise established that the guardian of an estate is not vested with title to a minor's estate but is only charged with its care and management. (*In re Estate of Hardaway* (1960), 26 Ill. App. 2d 493, 168 N.E.2d 796.) Thus, a guardian cannot simply give away the minor's estate without approval of the court.

In the bench trial, a copy of the $25,000 CD, purchased by Chester as guardian of Daniel's estate, was admitted into evidence. This copy revealed that the CD was cashed on September 19, 1988. Similarly, a copy of the cashier's check made out to Robert for $20,000 was admitted into evidence. The cashier's check reflected that it was issued the same date as the CD was cashed, and it also reflected that the source of the $20,000 was the $25,000 CD. Chester testified that he had made "loans" from Daniel's estate before, and such testimony was corroborated by Chester, Jr. Further, Chester testified that he asked Robert when he would pay him back and Robert said in 90 days. Chester's believability and version of the transaction could be and, apparently, was determined by the trial judge as being the truth of the matter. This court cannot find that the manifest weight of the evidence, logic, reason, or the facts dictate that the trial judge was in error in finding that the intent of Chester was to make a loan of the assets in Daniel's estate to the defendants.

Defendants argue that Chester did not make them sign a promissory note and that this was an indication of an intent to make a gift. This same argument can be raised against the defendants in that, if Chester intended to borrow $20,000 from the estate of Daniel and give such to the defendants, then Chester should have signed a promissory note payable to Daniel's estate. Moreover, there is nothing in the record to indicate that Chester intended to give Daniel's estate to the defendants other than the defendants' belief that Chester in-

tended to make a gift. The defendants' belief, assuming the trial judge found defendants to be believable, that Chester intended to make a gift arose from the alleged failure of Chester to tell the defendants that the $20,000 was a loan. Even with a presumption of a gift, plaintiffs rebutted such so that it became a question of fact for the trial court to determine. The trial court was justified in finding that Chester's alleged silence and the defendants' alleged belief by themselves were insufficient to overcome the evidence that Chester obtained money from his ward's estate, as he had with his other son, Chester, Jr., and loaned such to the defendants until defendants sold their house.

■ The next issue raised by defendants presents several difficulties arising in this case. Under the second issue, defendants contend that, if this court determines that the money transferred was a loan, the loan could not have come from Daniel's estate. Defendants argue this is so as Chester did not seek court approval to make the loan out of Daniel's estate, a requirement under the statute (Ill. Rev. Stat. 1991, ch. 110½, par. 11—13), and that, because Daniel had reached his majority at the time this suit was brought and because Chester's letters of guardianship were revoked (Ill. Rev. Stat. 1991, ch. 110½, par. 11—14.1), Chester could not bring this action on behalf of the estate. Defendants state: "Therefore, by operation of law, this could not have been a transaction taken by Chester Swiecicki, Sr., as guardian of the Estate." Defendants conclude that these facts operate to make the $20,000 a gift from Chester individually. Essentially, what defendants seem to be contending is (1) that Chester mismanaged the funds of Daniel's estate and therefore he could not have made a loan from the estate, and (2) that Chester had no standing to bring this suit as guardian of the estate since the guardianship had been terminated.

In considering the first portion of defendants' second issue, we initially note that it is clear from the record that Chester's actions with regard to Daniel's estate were egregious. However, the subject of this cause of action is not Chester's mismanagement of funds, but our scrutiny is limited to the determination of whether the transfer of $20,000 was a gift or loan. The mismanagement of Daniel's estate is not a defense to the instant case, nor does it create a gift instead of a loan. Moreover, defendants cite no authority for the proposition that the recipient of a loan can invalidate the loan and reap the benefit by keeping the money just because the agent of the loaner committed an *ultra vires* act in making the loan. We are not approving the acts of Chester in making the *ultra vires* loan to the defendants by ruling that there was a loan. Instead, we fail to see how the defendants have

standing to object or why defendants should benefit from the wrong Chester committed against Daniel.

Regarding the second portion of defendants' second issue, Chester's standing to sue as guardian of the estate, we find that we do not need to decide this issue because the error, if any, was cured by subsequent events in this case. In the proceedings in the trial court, the original complaint listed Chester, as guardian of Daniel's estate, as a party plaintiff only. Defendants filed a motion to dismiss the original complaint on October 28, 1991, the day the complaint was set for trial. In defendants' motion, they sought to have the complaint dismissed for failure to join Daniel as a necessary party. In this motion, they raised the issue of Chester's standing to sue as guardian of Daniel's estate. The trial judge, on March 5, 1992, ordered that Daniel be served with a copy of the complaint filed in this cause and that Daniel be given a reasonable opportunity to join as a plaintiff. (Ill. Rev. Stat. 1991, ch. 110, par. 2—407.) The trial judge further ordered that Daniel be made a "defendant" if he refused to join. (Ill. Rev. Stat. 1991, ch. 110, par. 2—402.) The court did not address the standing problem in its order. On April 6, 1992, defendants filed a document entitled "Joinder of Party," and in this document, the defendants joined Daniel as a party plaintiff, "pursuant to leave of Court granted on March 5, 1992." Again, we noted earlier that the court entered its judgment in favor of the *plaintiffs* and not just Chester J. Swiecicki, as guardian of the estate of Daniel, on June 10, 1992. On July 9, 1992, defendants filed a post-trial motion raising the issue that Daniel may not have been notified of the proceeding and that the court could not order that the amounts collected between the parties be paid to a third-party beneficiary. On July 30, 1992, attorney Christopher Swiecicki (grandson of Chester) (Christopher) entered his appearance on Daniel's behalf. Christopher already had been permitted, by court order on January 8, 1991, to join Chester's counsel as cocounsel. The trial court heard and denied the defendants' post-trial motion. Thus, Daniel was made a party plaintiff before entry of the court's order on June 10, 1992. Further, because Christopher entered his appearance on Daniel's behalf, albeit somewhat tardily, and because Christopher was present during most of the proceedings on the complaint, Daniel's interests were adequately presented and protected.

Furthermore, Daniel had standing to sue for the $20,000; therefore, the court's order, in which the money was ordered to be paid to Daniel, was proper. Additionally, it should be noted that Chester had not been discharged by the court as guardian of Daniel's estate, as evidenced by a court order entered on May 1, 1990, in the guardianship

case. Further, the suit was brought by the guardian of the estate of Daniel and not by Chester individually. Daniel's estate as an adult and Daniel's estate under a guardianship both belong to Daniel, and to hold that Daniel could sue as an adult to recover his estate but that he could not recover his estate because his former guardian initiated the action does not make sense. We fail to see why the difference, if any, of who manages Daniel's estate should inure to the benefit of the defendants. Daniel was the party that was injured, Daniel is the party that the court ordered to be repaid, and Daniel is bound by the judgment of the trial court due to his counsel entering his appearance in this case without filing any objections.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

CHAPMAN and MAAG, JJ., concur.