# Illinois Official Reports

## Appellate Court

---

### *Brenner v. Evelyn Statsinger Trust*, 2018 IL App (1st) 180131

---

| | |
|---|---|
| Appellate Court Caption | ARIEL BRENNER and TERRY BRENNER, Plaintiffs-Appellees, v. THE EVELYN STATSINGER TRUST and RICHARD GRAY GALLERY, Defendants-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-18-0131 |
| Filed | November 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-CH-08145; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Martin A. Blumenthal, of Northfield, for appellants.<br><br>Goodman Tovrov Hardy & Johnson, LLC, of Chicago (Adam Goodman, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Pucinski and Hyman concurred in the judgment and opinion. |

## OPINION

¶ 1    After a bench trial, the circuit court declared that plaintiffs-appellees, Ariel Brenner and Terry Brenner, were the rightful owners of certain works of art created by Evelyn Statsinger and that defendants-appellants, the Evelyn Statsinger Trust and Richard Gray Gallery, had no ownership interest in those artworks. Defendants appeal, contending that Statsinger's possession of the artworks for nearly 20 years prior to her death created a legal presumption of ownership and that plaintiffs adduced no competent evidence to rebut that presumption. We disagree and affirm.

¶ 2    In 2016, Ariel and Terry filed this lawsuit seeking a declaration that they were the owners of the artworks and seeking their return. After defendants' motions to dismiss and for summary judgment were denied, the matter was set for trial.

¶ 3    No court reporter was present for the bench trial. Only Ariel and Terry testified. They were not cross-examined, and other than two exhibits—the provenance of one of the artworks and the consignment agreement with the gallery—defendants presented no evidence. We draw the following facts from a bystander's report in the record.

¶ 4    In the 1950s or 1960s, Daniel and Rachel Brenner, parents of Ariel Brenner and her late brother, Jonathan Brenner, purchased four works of art from Statsinger: "Final Burial of a Very Young Dead One," "Land and Sea," "Composition," and an unnamed piece, "Untitled." From the time of their purchase until approximately 1996, the artworks were displayed in homes owned by the Brenners in Chicago and Door County, Wisconsin. Statsinger and the Brenners were friends. Daniel Brenner died in 1977 and Rachel Brenner died in 1990. Ariel and Jonathan inherited the works after Rachel's death. Jonathan died intestate in 2010, leaving his widow, plaintiff Terry Brenner, as his only heir.

¶ 5    At some point in 1996, the works were transferred to Statsinger. The transfer took place in Door County at the home formerly owned by Daniel and Rachel. Ariel was aware that arrangements had been made to transfer the artworks to Statsinger, but she was not present when the transfer took place. As reflected in a photograph taken that day (which is not in the record), Terry, Jonathan, their young daughter, Statsinger, and Statsinger's husband were present when the artworks were transferred. Terry believed the artworks were loaned to Statsinger to facilitate a long-contemplated retrospective of her career. Ariel never agreed to gift her interest in the artworks to Statsinger. Statsinger retained possession of the works until her death in February 2016.

¶ 6    In 2015, the Richard Gray Gallery agreed to mount a retrospective of Statsinger's work. Valerie Carberry, an employee of the gallery, visited Statsinger at her home several times before the show and observed the works transferred to her by the Brenners, among others, prominently displayed on her walls. When Statsinger consigned the works to the gallery, she signed a document representing that she owned all the works. All of the artwork later displayed at the gallery was listed for sale. Ariel attended the show and discovered that, with the exception of "Composition," which was not on display, the remaining artworks transferred to Statsinger were offered for sale.

¶ 7    The trial court ruled in favor of plaintiffs, and defendants timely appealed.

¶ 8    Defendants contend the standard of review is *de novo*; plaintiffs do not address the standard of review in their brief. We disagree that *de novo* review applies. Because this case

was resolved after trial and involves the trial court's assessment of the evidence presented by the parties, the appropriate standard of review is whether the result is against the manifest weight of the evidence. *Konfrst v. Stehlik*, 2014 IL App (1st) 132113, ¶ 11 (trial court's findings that property belongs to a particular person will not be disturbed unless contrary to the manifest weight of the evidence). A decision is against the manifest weight of the evidence only where the opposite conclusion is apparent or where the court's findings are arbitrary, unreasonable, or not based on the evidence. *Id.* We afford deference to the trial judge's factual findings because he or she "was in a superior position to judge the credibility of the witnesses and determine the weight to be given to their testimony." *Buckner v. Causey*, 311 Ill. App. 3d 139, 144 (1999); *Konfrst*, 2014 IL App (1st) 132113, ¶ 11.

¶ 9        Generally, a presumption of ownership arises from possession of property. *People v. Four Thousand Eight Hundred Fifty Dollars ($4,850) United States Currency*, 2011 IL App (4th) 100528, ¶ 17; *Gilbert v. National Cash Register Co.*, 176 Ill. 288, 297 (1898) ("The party in possession of personal property is presumed to be the owner of it, possession being one of the strongest evidences of title to personal property.").

¶ 10       But if the party challenging the presumption of ownership arising from possession presents evidence to rebut the presumption, the presumption ceases to exist. "[O]nce evidence is introduced contrary to the presumption, the bubble bursts and the presumption vanishes." *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 462 (1983); *Swiecicki v. Swiecicki*, 255 Ill. App. 3d 1037, 1040 (1994) (son claimed $20,000 given to him by his father was a gift rather than a loan: "Even if we assume that a presumption of a gift has been raised by the defendants, it ceases to operate once contrary evidence is introduced."). If evidence rebutting the presumption is introduced, then the case is decided on basis of evidence presented at trial as if no presumption had ever existed. *Franciscan Sisters*, 95 Ill. 2d at 460 (citing *Diederich v. Walters*, 65 Ill. 2d 95, 100-01 (1976)).

¶ 11       The party challenging a presumption must adduce evidence " 'sufficient to support a finding of the nonexistence of the presumed fact.' " *Id.* at 463 (quoting Michael H. Graham, *Presumptions in Civil Cases in Illinois: Do They Still Exist?* 1977 S. Ill. U. L.J. 1, 24). The quantum of evidence necessary to rebut a particular presumption "is not determined by any fixed rule" (*id.*) and depends on the circumstances of each case (*id.* (citing *Wunderlich v. Buerger*, 287 Ill. 440, 445 (1919))). For example, when a substantial bequest is made to the testator's attorney under a will, a strong presumption of undue influence arises, and the evidence necessary to rebut that presumption must be clear and convincing. *Id.* at 464-65. In contrast, where, as here, no fiduciary relationship exists between the parties, the degree of proof necessary to rebut the presumption of ownership arising from possession of personal property is correspondingly lower.

¶ 12       If the presumption of ownership based on possession of property ceases to exist, the possessor of property who claims that the property was a gift must establish by clear and convincing proof the donor's intent to make a gift. *Schramm v. Schramm*, 13 Ill. 2d 281, 288 (1958) ("It has many times been stated by this court that to establish a gift the proof must be clear and convincing, and the burden is upon the alleged donee to prove the existence of a donative intent."); *Koerner v. Nielsen*, 2014 IL App (1st) 122980, ¶ 13 (in replevin action, once plaintiff makes a *prima facie* showing of entitlement to possession, burden shifts to defendant to establish by clear and convincing evidence that property was a gift). Clear and convincing evidence is defined as "the quantum of proof that leaves no reasonable doubt in the

mind of the fact finder as to the truth of the proposition in question." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995). It is something "more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense." *Id.*; see also *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

¶ 13    Defendants correctly argue that plaintiff bore the burden to rebut the presumption of ownership arising from Statsinger's possession of the artworks for nearly 20 years before they were consigned to the gallery. Defendants maintain that plaintiffs failed to present evidence sufficient to rebut the presumption. We disagree.

¶ 14    The artworks were purchased by Daniel and Rachel Brenner and they passed by inheritance to their children when Rachel passed away in 1990. When those works were transferred to Statsinger in 1996, it was Ariel and Jonathan's intent that was relevant, and according to the bystander's report, Ariel did not intend to gift her interest in the works to Statsinger in 1996 and, as far as Terry understood, neither did Jonathan. See *Koerner*, 2014 IL App (1st) 122980, ¶ 19 (donative intent determined at the time of the transfer of property). The affirmative testimony of one of the owners of the artworks that when they were transferred in 1996, she did not intend to gift the works to Statsinger, which the trial court was entitled to and did accept, is a strong indication that no gift was intended. Particularly since defendants elected not to cross-examine either Ariel or Terry, once this evidence was presented to the trial court, the presumption arising from Statsinger's physical possession of the works ceased to operate. It was then defendants' burden to show by clear and convincing evidence that the transfer was intended as a gift. Given that (i) Statsinger's longstanding possession of the works, standing alone, could not satisfy defendants' burden and (ii) defendants presented no other evidence of donative intent, it necessarily follows that the trial court correctly ruled in favor of plaintiffs.

¶ 15    Both parties were constrained in proving their respective positions by the provisions of the Dead Man's Act (735 ILCS 5/8-201 (West 2016)). The trust was defending as a representative of Statsinger. Jonathan, one of the claimed donors, was deceased, as were Statsinger, the alleged donee, and her husband, who was present when the works were transferred in 1996. There was clearly more to the story than was presented to the trial court. For example, the complaint contained detailed allegations of conversations between Ariel and Statsinger regarding the loan of two of the works for the retrospective and between Rachel and Statsinger, before Rachel's death, regarding the loan of two other works. Also, defendants identified in discovery a third party who drove Statsinger and her husband to pick up the works in 1996 who testified in a deposition to overhearing conversations between Ariel (who was not present at the time of the transfer) and Statsinger indicating that Ariel was giving Statsinger the works because she had no place to display them. Any effort by defendants to introduce evidence favorable to their position and involving conversations with Statsinger regarding the transfer of the works would have opened the door to other unfavorable evidence. *Id.* § 8-201(a). ("If any person testifies on behalf of the representative to any conversation with the deceased *** or to any event which took place in the presence of the deceased ***, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event.") So the trial court was required to decide the case on the limited evidence presented.

¶ 16    With respect to the only live testimony considered by the trial court, defendants contend that Ariel and Terry offered "self-serving" testimony. Attaching that label to evidence presented by a party is largely meaningless because, without more, all it implies is that the

party adduced evidence favorable to its legal position. Both Ariel and Terry were competent to testify regarding donative intent at the time the works were transferred to Statsinger, which was the issue the trial court was called upon to determine. Further, it would have been obvious to the experienced trial judge that Ariel and Terry stood to gain if he found their testimony credible. And while Terry testified to her "impression" that the works were being loaned to Statsinger for display in an anticipated retrospective, Ariel affirmatively testified that she never agreed to gift her interest in the works to Statsinger. This evidence was competent and sufficient to overcome the presumption of ownership resulting from Statsinger's possession of the artworks.

¶ 17 The trial judge, who heard and assessed the credibility of the witnesses, was entitled to credit Ariel and Terry's testimony over defendants' assertion that Statsinger's physical possession of the artworks and her representation to the gallery that she owned them was sufficient to establish donative intent. Consequently, the trial court correctly declared plaintiffs the rightful owners of the artworks.

¶ 18 Affirmed.